# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA
## CIVIL FILE NO.: 17-cv-05132 (DSD/HB)

---

Jason Heroux,

              Plaintiff,

vs.

Callidus Portfolio Management
Inc., and Messerli & Kramer, P.A,

              Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

---

Messerli & Kramer P.A., ("Messerli") and Callidus Portfolio Management Inc. ("Callidus") (collectively "Defendants") respectfully submit this Memorandum in support of their motion for judgment on the pleadings.

## STATEMENT OF FACTS

Plaintiff, Jason Heroux (hereinafter "Heroux") obtained a Menards account with an interest rate that exceeded six percent (6%). (Answer ¶13, Exhibit B pp.3-4.) Heroux never disputed the interest while using the credit card or making payments thereon. After Heroux defaulted on his account, it was charged off and eventually sold to Callidus. (Answer ¶10, Ex.A p.3.) Callidus retained Messerli to pursue litigation on the account. (Compl. ¶8.)

Heroux was served with a summons and complaint in the state court action on April 12, 2016. (Answer Ex.A pp.1-5.) The complaint sought a principal balance of $1,665.11 and interest at the rate of six percent (6%.) *Id.* Contrary to Heroux's allegations, Callidus did not request statutory interest.

Heroux answered the state court complaint with a general denial on March 16, 2017.  (*Id.* pp.11-14.)  In response to Heroux's general denial, Messerli served discovery on Heroux.  (*Id.* pp.19-37.)  The discovery instructed the consumer to respond to the discovery within thirty days.  *Id.*  Messerli titled the discovery "interlocking discovery."  *Id.*  Heroux failed to respond to the discovery or otherwise participate in the litigation.  *Id.*  Defendant Messerli filed a summary judgment motion in Hennepin County District Court, Court File No. 27-CV-17-5014. (*Id.* pp.15-54.)

Both Messerli and the Court sent Heroux a hearing notice for the summary judgment motion hearing before Judge Susan M. Robiner ("Judge Robiner.")  *Id.*  Heroux failed to appear at the hearing.  On June 23, 2017, Judge Robiner issued an order based on the files, records and proceedings. (*Id.* pp.56-58.)  In the order, the Court issued its findings of fact, including that an account was established between Heroux and HSBC Bank, N.A.  *Id.* The Court concluded that the Bill of Sale established that Callidus purchased and was assigned the account from HSBC through a chain of assignments outlined in the Court's order.  (*Id.* ¶¶2-6.)  The Court awarded Callidus six percent (6%) interest totaling $541.91 and costs and disbursements of $674.00 which included the $3.00 affidavit fee requested by Messerli.  (*Id.* ¶1.)  Heroux did not appeal the final judgment.

Heroux alleges that Messerli and Callidus violated the FDCPA, alleging that he was confused by the instructions, admissions and the word "interlocking" contained in the discovery served by Messerli; that Messerli misrepresented Callidus' name by not including "Inc." and that Messerli violated the FDCPA by including "successor in interest" language in the case caption of the state court case.  Heroux also alleges that the request for interest and costs awarded by the state court violated the FDCPA.

Callidus is not a debt collector under the FDCPA; rather, Callidus is a passive debt buyer that purchases debt and hires third parties such as Messerli to collect the debt.  (Answer ¶6.)  Callidus makes no phone calls and sends no letters to collect its debts.  *Id.*  Callidus takes no affirmative action nor does it use interstate commerce or the mails to collect its debts.  *Id*.  The only action taken by Callidus was its decision to hire Messerli to collect its debt.  (Answer ¶1.)  At all times relevant herein, Callidus was represented by counsel, Messerli who independently exercised all decisions regarding the prosecution of the collection lawsuit.  *Id.*

## **LEGAL STANDARD**

In reviewing a motion for judgment on the pleadings, the Court applies the same standard as it would on a motion to dismiss.  *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009).  Dismissal is appropriate when all the facts alleged in the complaint are accepted as true and a plaintiff has not pled

"facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In determining whether a Complaint survives a motion to dismiss under Rule 12(b)(6), the court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. Of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

On a Rule 12(c) motion, the court may consider the pleadings including the complaint, the answer and **any** exhibits. *Amisi v. Melick*, No. CIV 15-4083, 2017 U.S. Dist. LEXIS 71456, at *26 (D.S.D. May 8, 2017); *Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909 (8th Cir. 2002); *Blazek v. United States Cellular Corp.*, 937 F. Supp. 2d 1003, 1016 (N.D. Iowa 2011); citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (the court may consider affidavits, letters, contracts, documentation and other materials attached to the complaint or answer.)

The court may also consider materials outside the pleadings that are necessarily embraced by the pleadings, and matters of public record. *See, e.g.*, *Leonardo v. MSW Capital, LLC,* No. 16-cv-3845 (PAM/FLN), 2017 U.S. Dist. LEXIS 73081, at *1 (D. Minn. May 12, 2017) citing to *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015) (permitting consideration of state court decisions as matters of public record); *see also Levy v. Ohl*, 477 F.3d

Page 4

988, 991 (8th Cir. 2007) ("Rule 12(b)(6) motions are not automatically converted into motions for summary judgment simply because one party submits additional matters in support of or in opposition to the motion.")

Additionally, "the court has complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion." *Stahl v. United States Dep't of Agric.*, 327 F.3d 697, 701 (8th Cir. 2003). The Court can review the account terms as they are embraced by the pleadings. *Coyne v. Midland Funding, LLC*, No. 17-cv-500 (PAM/SER), 2017 U.S. Dist. LEXIS 113371, at *10 (D. Minn. July 20, 2017); s*ee also Young v. Principal Fin. Group, Inc.,* 547 F. Supp. 2d 965, 974 (S.D. Iowa 2008) ("The paradigmatic example of material 'necessarily embraced' by a pleading is a written contract in a case that involves a dispute over the terms of the contract"); *Ferman v. Jenlis, Inc.,* 224 F. Supp. 3d 791, 803 (S.D. Iowa 2016) ("[I]n cases involving interpretation of contract terms, the contract documents are usually considered embraced by the pleadings and can be considered on a motion to dismiss.")

## I. DEFENDANTS ARE ENTITLED TO DISMISSAL OF HEROUX'S CLAIMS PURSUANT TO FED. R. CIV. P. 12(B)(1).

The issues presented in Heroux's Complaint were previously adjudicated in *Callidus Portfolio Management v. Jason Heroux,* Hennepin County Court File No. 27-CV-17-5014' as exemplified in the following chart:

| Heroux's Claim | State Judgment quote |
|---|---|
| Collection of interest (1692f(1)) | "Callidus seeks entry of judgment … for … principal balance of $1,665.11, interest of $541.91, plus costs and disbursements of $674.00."  "[Heroux] is indebted for the amount claimed by and owing to [Callidus.]" |
| Collection of costs (1692f(1)) | Same |
| False Bill of Sale (1692e(10)) | "[Callidus] is the rightful assignee of [Heroux's] account." |
| False original creditor name (1692e(10)) | "…an account was established between [Heroux] and HSBC Bank N.A" |
| False name (no Inc.) (1692e(10)) | "Judgment shall be entered in favor of Plaintiff and against Defendant in the total amount of $2,881.92" |
| False name (successor in interest) (1692e(10)) | Same |
| "Interlocking" (1692d) | "Plaintiff served its First Set of Interlocking Discovery upon Defendant on April 4, 2017. Defendant failed to respond to Plaintiff's discovery requests." |
| Admissions regarding evidence (1692d) | "Based upon Defendant's failure to respond to Plaintiff's motion for summary judgment and the evidence presented by Plaintiff, there is no genuine issue of material fact.  Plaintiff is entitled to judgment." |
| Judgment based upon admissions (1692d) | Same |

"Jurisdictional issues, whether they involve questions of law or of fact, are for the court to decide." *Mueller v. Barton*, 2014 U.S. Dist. LEXIS 127866, *7 (E.D. Mo. Sept. 12, 2014) (citing *Osborn*, 918 F.2d at 729.)[1]

---

[1] If Heroux believes the underlying judgment was entered in error, he may bring a motion pursuant to Minn. R. Civ. P. 60.02.  However, Heroux has failed to seek any remedy in the original court of jurisdiction; instead requesting the Federal Court to substitute its opinion for the state court.

### A. Heroux's Claims Are Barred By Claim Or Issue Preclusion And Are In Violation Of The *Rooker-Feldman* Doctrine.

#### 1. Claim Preclusion – *Res Judicata.*

The principle of claim preclusion or *res judicata* eliminates the need to re-litigate issues and events already decided in a court of law.  *See Beutz v. A.O. Smith Harvestore Products, Inc.*, 431 N.W.2d 528, 531 (Minn. 1988).  "The common test for determining whether a former judgment is a bar to a subsequent action is to inquire whether the same evidence will sustain both actions."  *McMenomy v. Ryden,* 276 Minn. 55, 58, 148 N.W.2d 804, 807, 1967 Minn. LEXIS 983, *7, 30 A.L.R.3d 1078 (Minn. 1967).  A party cannot avoid the application of *res judicata* by changing its theory of liability in a subsequent action.  *Porta-Mix Concrete, Inc. v. First Ins. E. Grand Forks,* 512 N.W.2d 119, 122 (Minn. Ct. App. 1994).  The Eighth Circuit Court of Appeals outlined a four-part test to determine when *res judicata* bars re-litigation: (1) the first suit must result in a final judgment on the merits; (2) the first suit must be based on proper jurisdiction; (3) both suits must involve the same nucleus of operative fact; and (4) both suits must involve the same parties or their privies. *Kolb v. Scherer Bros. Fin. Servs. Co.,* 6 F.3d 542, 544 (8th Cir. 1993); *Lane v. Peterson,* 899 F.2d 737, 741 (8th Cir. 1990).

Here, these four factors are met: Judge Robiner of Hennepin County District Court (1) issued a judgment; (2) had proper jurisdiction; (3) both suits

are related to the same facts and (4) both suits involve the same parties. The state court awarded Callidus six percent (6%) interest and affidavit costs of $3.00. Heroux is barred under *res judicata* from re-litigating those claims. The state court also held that Callidus was the proper party in interest and that the bill of sale provided an adequate chain of title. Finally, the Court considered the discovery at issue and determined that it was sufficient for judgment, thereby implicitly establishing that the discovery was fair, accurate and not confusing.

## 2. Issue Preclusion – *Collateral Estoppel.*

Collateral estoppel or issue preclusion bars the re-litigation of factual or legal issues that were determined in a prior court action, and bars re-litigation in federal court of issues previously determined. *Banks v. Int'l Union Elec.,Technical, Salaried & Machine Workers,* 390 F.3d 1049, 1054 (8th Cir. 2004). Collateral estoppel is available where: (1) the issues are identical to those in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party in the previous action; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issues. *Minneapolis Cmty. Dev. Agency v. Buchanan,* 268 F.3d 562, 566 (8th Cir. 2001).

The state court (1) considered the same issues; (2) entered final judgment; regarding (3) the same parties; after (4) Heroux had a full and fair

opportunity to be heard.  The issues before this court depend upon the same issues addressed by the state court.  Heroux was given the opportunity to respond to the discovery, conduct his own discovery, and present briefing or arguments before the Court, which he did not do.  Heroux was also given fair notice of the summary judgment motion hearing and did not appear.  Thus, Heroux's claims are barred by collateral estoppel.

### 3.  Heroux's Claims Violate the *Rooker-Feldman* Doctrine.

Under *Rooker-Feldman* abstention, "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006) (per curiam) (citing *Rooker v. Fidelity Trust Co,* 263 U.S. 413, 416 (1923).  The *Rooker-Feldman* doctrine is a threshold doctrine that "derives from the prohibition on federal appellate review of state court proceedings," *Bechtold v. City of Rosemount*, 104 F.3d 1062, 1065 (8th Cir. 1997), and provides that "lower federal courts do not have subject matter jurisdiction over challenges to state court decisions in judicial proceedings."  *Neal v. Wilson,* 112 F.3d 351, 356 (8th Cir. 1997.)

*Rooker-Feldman* bars claims related to alleged injuries from state court judgments.  *Mueller*, 2014 U.S. Dist. LEXIS *8 (citing <u>*Dennis*</u>, 546 U.S. at 464.)  It bars "cases brought by state-court losers complaining of injuries caused by state-court judgments."  *Id.* (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, (2005).  Under *Rooker-Feldman*, "a

party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy,* 512 U.S. 997, 1005-06, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994).

Heroux's Complaint alleges various injuries that directly contradict the state court judgment, including that Callidus was entitled to interest and costs and that the bill of sale accurately stated the chain of title.   (Answer Ex.A pp.56-59.)  Judge Robiner reviewed the discovery and documents related to Heroux's account and entered judgment in favor of Callidus; thereby, implicitly determining that the discovery served was not deceptive, misleading, oppressive, unfair, or misleading.  *Id.*

Heroux's claims are in direct violation of *Rooker-Feldman* as expounded upon in *Johnson* and other Eighth Circuit case law cited *supra.*  Here, Heroux is the "state court loser" described in *Exxon* and is impermissibly seeking relief from injuries that necessarily require this Court to review and reject the underlying state court judgment.

### 4.  Heroux's Claims Are Inextricably Intertwined with the State Court Judgment.

Even if Heroux's FDCPA claims were not directly adjudicated in the state district court, this Court's consideration of Heroux's claims would be an

impermissible appellate review because his claims are inextricably intertwined with the issues determined by the state court judgment. "Although the state and federal claims may not be identical, impermissible appellate review may occur when a federal court is asked to entertain a claim that is 'inextricably intertwined' with the state court judgment." *Goetzman v. Agribank, FCB (In re Goetzman)*, 91 F.3d 1173, 1177 (8th Cir.), *cert. denied,* U.S., 117 S. Ct. 612, 136 L.Ed.2d 537 (1996); *see Neal*, 112 at 356. "In order to determine whether a claim is 'inextricably intertwined' with a state court claim, the federal court must analyze whether the relief requested in the federal action would effectively reverse the state court decision or void its ruling." *Bechtold*, 104 F.3d at 1065; *Keene Corp. v. Cass*, 908 F.2d 293, 296-97 (8th Cir. 1990); *Fielder v. Credit Acceptance Corp.,* 188 F.3d 1031, 1034 (8th Cir. 1999) (holding that a claim is "inextricably intertwined" with a state court judgment if it "succeeds only to the extent that the state court wrongly decided the issues before it or if the relief requested … would effectively reverse a state court decision or void its ruling")(quoting *Charchenko v. City of Stillwater,* 47 F.3d 981, 983 (8th Cir. 1995)); *see also Resler v. Messerli & Kramer, P.A.*, 2003 U.S. Dist. LEXIS 1741, *5-6, 2003 WL 193498 (D. Minn. Jan. 23, 2003).

Heroux's claims are barred by *Rooker-Feldman* because Heroux is requesting that this Court reverse the findings of the state court's final

judgment.  Heroux's claims related to the interest and costs awarded by state district court are clearly inextricable intertwined with the state court judgment.  Heroux's claim's regarding discovery, the bill of sale, or name of the creditor are equally intertwined with the state court judgment. Essentially, Heroux's claims in their entirety are based on circumstances surrounding the state court judgment entered against him.  To find a FDCPA violation, this Court would have to make determinations that would overturn Judge Robiner's state court order, contrary to the *Rooker-Feldman* doctrine.

## II.   CALLIDUS IS NOT A "DEBT COLLECTOR" UNDER THE FDCPA.

Callidus is a passive debt buyer who owns all of its own accounts, and thus does not collect debts owed or due to another; accordingly, it is not a "debt collector" as a debt collector is defined under §1692(a)(6) or the *Santander* analysis.  In *Henson v. Santander,* 137 S Ct. 1718, 1720, 198 L. Ed. 2d 177 (2017), the United States Supreme Court evaluated the definition of a debt collector under §1692(a)(6).  The FDCPA defines a debt collector as anyone who "regularly collects or attempts to collect… debt owed or due… to another," and the Court stated in *Santander* that those entities who regularly purchase debts originated by another entity do not trigger the definition of a debt collector under the FDCPA.  *Henson v. Santander*, 137 S Ct. 1718, 1720, 198 L. Ed. 2d 177 (2017).  The Supreme

Court clearly stated in evaluating the definition of "debt collector" under

the FDCPA:

> "And by its plain terms this language seems to focus our
> attention on third party collection agents working for a debt
> owner—not on a debt owner seeking to collect debts for itself.
> Neither does this language appear to suggest that we should care
> how a debt owner came to be a debt owner—whether the owner
> originated the debt or came by it only through a later purchase.
> All that matters is whether the target of the lawsuit regularly
> seeks to collect debts for its own account or does so for "another."
> And given that, it would seem a debt purchaser like Santander
> may indeed collect debts for its own account without triggering
> the statutory definition in dispute, just as the Fourth Circuit
> explained." *Id.* at 1721-22.

Callidus owned the account and was not collecting on behalf of another.

*Baranowski v. Blitt & Gaines, P.C.*, No. 17 C 2407, 2017 U.S. Dist. LEXIS

121336, at *10 (N.D. Ill. Aug. 2, 2017) (holding that subsequent purchaser of

the debt was not a debt collector and thus was not subject to the FDCPA nor

vicariously liable for the actions of its attorneys); *see also Wilson v. Grest*, No.

CV 17-2997, 2017 WL 4998651, at *2 (E.D. La. Nov. 2, 2017) (holding that the

FDCPA "regulates the activities of debt collectors, and does not apply to a

creditor seeking to collect its own debts"); *George v. Nationstar Mortg., LLC*,

No. 16-CV-261 (MKB), 2017 WL 3316065, at *8 (E.D.N.Y. Aug. 2, 2017)

("[E]ven where an entity acquires a defaulted debt, it is not a debt collector

where it does not engage in collection activities or where it seeks to collect on

its own behalf rather than 'for another'"); *Capozio v. JP Morgan Chase Bank,*

*NA*, No. 16-5235, 2017 U.S. Dist. LEXIS 184070, at *8 (E.D. Pa. Nov. 7, 2017)

("The Supreme Court has now clarified that Congress did not intend for debt

buyers to be considered debt collectors for the purposes of the Act, where the

debt buyer attempted to collect debts which the debt buyer owned");

*Chernyakhovskaya v. Resurgent Capital Services L.P.*, No. 2:16-CV-1235

(JLL), 2017 WL 3593115, at *9 (D.N.J. Aug. 18, 2017) (dismissing debt

purchaser from FDCPA liability and stating that "[p]er *Henson*, an entity

that purchases a debt for its own account does not constitute a debt collector

under the FDCPA.")

Callidus is a passive debt buyer that purchases debt and forwards its

accounts to third parties such as Messerli to collect[2]. (Answer ¶6.) Callidus

does not send out any letters to debtors nor does it make calls to collect on the

debts nor does it make any communication with debtors. *Id*. The FDCPA

statute governs interactions between debt collectors and consumers and

seeks "to eliminate abusive debt collection practices by debt collectors." *Id, §*

1692(a). "An entity that acquires a consumer's debt hoping to collect it but

that does not have any interaction with the consumer itself does not

necessarily undertake activities that fall within this purview." *Kasalo v.*

---

[2] The court need not accept as true Heroux's self-serving conclusory
averments that Callidus uses mails or interstate commerce or is a business
that principal purpose is the collection of debts of another. *Hanten v. Sch.
Dist. Of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999).

*Trident Asset Mgmt., LLC*, 53 F. Supp. 3d 1072, 1078-79 (N.D. Ill. 2014); *See also Knowles v. United Debt Holdings, LLC*, No. 1:14-CV-01815-AWI-GSA, 2015 U.S. Dist. LEXIS 124596, at *4 (E.D. Cal. Sep. 16, 2015) ("A company that purchased debts from original creditor but engaged a second company to collect on those debts was not a "debt collector" under the FDCPA.")

The court in *Capozio v. JP Morgan Chase Bank, NA*, No. 16-5235, 2017 U.S. Dist. LEXIS 184070, at *9 (E.D. Pa. Nov. 7, 2017) dismissed the debt purchaser from the FDCPA lawsuit where the consumer conclusory plead that the debt buyer was a debt collector under the FDCPA because its principal purpose was the collection of debts.  In applying the *Henson* analysis the Court held that "Plaintiffs have wholly failed, however, to allege any facts to support their new contention that Defendant's "principal purpose" is debt collection such that Defendant fits within the alternative definition of "debt collector." *Id*.

Courts have held that an entity must take some affirmative collection activity or have some interaction with the indebted consumer to be a business with the "principal purpose" of debt collection.  *Kasalo v. Trident Asset Mgmt., LLC.*, 53 F. Supp. 3d 1072, 1079 (N.D. Ill. 2014).  In *Kasalo*, a debt purchaser bought the plaintiff's defaulted debt and contracted with another business for collection on that debt.  *Id.* at 1076.  That contracted company made all of the collection efforts, including sending one demand letter that

listed the debt purchaser as the current creditor.  *Id.*  The debt purchaser moved for summary judgment on all claims, stating it was not a debt collector under the FDCPA.  The court concluded that the FDCPA requires a business take some "collection activity" to meet the statutory definition of "debt collector," specifically noting that the plaintiff had not alleged that the defendant had any role in the drafting of the demand letter, and that the defendant had no contact with the plaintiff, the court held that the defendant debt purchaser did not meet the statutory definition of "debt collector."  *Id.* at 1079-80.

Similarly the Court in *McAdory v. M.N.S & Assocs., LLC*, No. 3:17-cv-00777-HZ, 2017 U.S. Dist. LEXIS 182472, at *5 (D. Or. Nov. 3, 2017) dismissed all claims related to the debt purchaser where the complaint failed to allege any interaction that the debt purchaser had with any consumer. The Court stated that, "Debt purchasing companies like DNF who have no interactions with debtors and merely contract with third parties to collect on the debts they have purchased simply do not have the principal purpose of collecting debts. Therefore these companies must fall outside the purview of the FDCPA." *Id*. The Court noted that under the act to qualify as a debt collector the business's "most important" purpose should be that of the collection of any debts.  *Id*. The Court followed that,

"A debt purchasing company may be a debt collector in the literal sense that it purchases debt for the purpose of making money by hiring a third party to collect on that debt. However, this activity doesn't comport with the statutory definition requiring that "collection" be the most important or influential purpose that the company has. The fact that a business *benefits* from the collection of debt by an entirely separate third party does not necessarily make the principal purpose of that business the collection of those debts." *Id.* at *9.

The Court went on to state that when looking at the remedial purpose of the statute which is to "eliminate abuse debt collection practices by debt collectors" it was clear that the statute was intended only to regulate interactions between debt collectors directly with consumers. *Id.*

Similarly, this court should follow the holdings of *Henson, McAdory, Kasalo* and *Capozio* by dismissing all claims as they relate to Callidus as it does not communicate directly with consumers or take any affirmative action to collect on the debt.

## III.   CALLIDUS' REQUEST FOR INTEREST WAS EXPRESSLY AUTHORIZED BY CONTRACT.

Contractual interest in the amount of $541.91 was specifically requested and granted by the state court; thus, a federal court review of that ruling is prohibited. However, Callidus was expressly contractually entitled to at least six percent (6%) interest.  That contractual interest was never waived by the Callidus or its predecessors.

### A. Interest was Authorized by Contract and Was Not Waived.

Heroux speculates, without any evidence, that the interest requested is statutory rather than contractual. Heroux goes on to draw the inaccurate legal conclusion that contractual interest was waived by the creditor when it failed to send periodic statements under the TILA. *See* Compl. ¶¶ 45-48.

### B. Heroux Contracted to Pay HSBC Bank N.A. (and Its Assignees) More Than Six Percent (6%) Interest.

Under Minnesota Statutes and the United States Code, interest may accrue on a debt, and may be sought by a debt collector or creditor. Minn. Stat. § 334.01, subd. 1, states in pertinent part that "[t]he interest for any legal indebtedness shall be at the rate of $6 upon $100 for a year, <u>unless a different rate is contracted for in writing</u>." (<u>emphasis</u> added.)[3] The FDCPA, 15 U.S.C. § 1692f, provides:

> [T]he following conduct is a violation of this section:
>
> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) **unless such amount is expressly authorized by the agreement creating the debt or permitted by law** (emphasis added).

As such, these laws specifically provide that a written contract or agreement may establish an enforceable alternative interest rate. *Id.*

Contractual interest owed on the account is significantly higher than what was requested. (Answer Ex.A p.30, Ex.B pp.3-4.) The FDCPA allows

___

[3] Heroux references Minn. Stat. § 491A.01, subd. 3(a) in the Complaint; however, that statute does not apply to contractual interest, nor does it apply to claims outside conciliation courts.

creditors to seek less contractual interest than they are entitled. *Stratton v. Portfolio Recovery Assocs., LLC*, 171 F. Supp. 3d 585, 602-03 (E.D. Ky. 2016); *Sivongxay v. Medcah, Inc.,* 2017 U.S. Dist. LEXIS 184690, 2017 WL 5162799 (D. HI Nov. 7, 2017).   Terms and conditions allow creditors and their successors in interest to impose interest charges until the account is paid in full. *(*Answer Ex.B: Default Rate APR is 24.9%.)  *See also Haney v. Portfolio Recovery Assocs., L.L.C.,* 837 F.3d 918, 929 (8th Cir. 2016) (assignee acquires all rights assignor had at the time of the assignment);  *Vickey v. Asset Acceptance, LLC*, 2004 WL 1510026 (N.D. Ill., Jul. 02, 2004) ("assignee stands in the shoes of the assignor.")  Courts have recognized that a creditor may assign its rights to collect a debt, subject to the original contractual terms, including the rate of interest. *See*, *e.g. Olvera v. Blitt & Gaines, P.C., 2004 WL 887372* (N.D. Ill., Apr. 26, 2004) ("If Olvera agreed to pay [the original creditor] 18.2 percent or higher, Olvera's suit must fail because Blitt & Gaines is attempting to collect interest at a rate 'expressly authorized by the agreement' and 'permitted by [Illinois] law'."); *Dawson v. The Bureaus, Inc.* 2004 WL 2921871 (N.D. Ill., Dec 14, 2004) ("the parties agree that [the original creditor] was entitled to exact 22.99% interest on [plaintiff's] credit card balance. At the time the debt was assigned, then, the laws of the state … authorized [d]efendants to charge interest up to and including the 22.99% rate."). The prevailing logic followed by these courts precludes Heroux's case.

The FDCPA allows for the collection of any amount "expressly authorized by agreement creating the debt". 15 U.S.C. § 1692f.   Here, the contract permitted interest to be charged at a rate greater than the six percent requested.   As such, Callidus was contractually and legally authorized to collect contractual interest on the debt.   *See also Coyne v. Midland Funding, LLC*, No. 17-cv-500 (PAM/SER), 2017 U.S. Dist. LEXIS 113371, at *9 (D. Minn. July 20, 2017) (holding that "consumers who have credit cards know that those companies charge exorbitant interest" and that "getting and using a credit card constitutes sufficient assent to that card's terms and conditions, which always include interest and fees.")

### C. Neither HSBC Nor Its Assignees, Including Callidus, Waived Their Right to Collect Interest.

Heroux alleges in his Complaint that Callidus waived its right to charge interest after failing to send periodic statements post change-off.[4] Heroux's only evidence of this waiver is an unsubstantiated conclusion that HSBC did not send periodic statements post charge-off.   However, Minnesota and Eighth Circuit law is clear that to establish waiver, Heroux bears the

---

[4] Heroux's waiver allegations should be dismissed because he never pled waiver in his Answer.  *See* Answer Ex. A at 11-14.  Waiver is an affirmative defense that must be ***specifically pled***, or it is waived. Minn. R. Civ. P. 8.03; Fed. R. Civ. P. 8(c);  *Rehberger v. Project Plumbing Co.*,295 Minn. 577, 578, 205 N.W.2d 126, 127 (1973). ("A "failure to plead an affirmative defense, without later amendment of the pleading, waives the defense.")

burden to show expressed intent through the use of an unequivocally clear overt act. "Waiver is the intentional relinquishment of a known right." *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 367 (Minn. 2009). Knowledge and intent are essential elements of waiver. *Stephenson v. Martin,* 259 N.W.2d 467, 470 (Minn. 1977). Waiver is the expression of an intention not to insist upon what the law affords; it is consensual in its nature. *Carlson v. Doran*, 252 Minn. 449, 450, 90 N.W.2d 323, 324, 1958 Minn. LEXIS 631, \*2 (Minn. 1958). Intent to relinquish a known right is rarely to be inferred as a matter of law. *Fedie v. Mid-Century Ins. Co.*, 631 N.W.2d 815, 819 (Minn. App. 2001). Nor can intent be implied from mere inaction. *State v. 3M Co.,* 845 N.W.2d 808, 819, 2014 Minn. LEXIS 202, \*24, 2014 WL 1696180 (Minn. 2014).

Specifically, in the context of the FDCPA, courts have consistently ruled that mere allegations related to failing to send statements after charge off do not rise to the level of stating relief to which relief can be granted under the FDCPA. *Wilder v. J.C. Christensen & Assocs.*, 2016 U.S. Dist. LEXIS 168440 (N. Dist. Ill. December 6, 2016). The *Wilder* court explained that charging off delinquent accounts is a federal regulatory requirement. "Pursuant to the Uniform Retail Credit Classification and Account Management Policy, a financial institution must charge-off a credit card loan that remains delinquent for 180 days." *Id.* at \*15; *see also* 65 Fed. Reg.

36,903-01 (June 12, 2000); [1-1, Ex. D at 10].  Thus, the Court held that

charge-off is not evidence of waiver since it is "not a voluntary action of the

creditor."  *Id*.  The Court specially held, "None of these facts, standing alone

or together, plausibly suggests that [the creditor] waived even its own ability

to add interest, much less the rights of all assignees to add interest

prospectively."  *Id*. at *17.

The *Wilder* court also addressed the TILA arguments made by the

Heroux:

> "The requirement to send periodic statements is determined by
> the Truth In Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), and
> its implementing regulations, 12 C.F.R. § 226 ("Regulation Z").
> While such a cessation of periodic statements *may* occur when a
> lender waives further interest charges, it may also happen if the
> creditor decides the debt is uncollectible, it has commenced a
> delinquency action, additional statements are precluded by
> statute, or if it sells the debt." 12 C.F.R. § 226.5(b)(2)(i); *Wilder v.
> J.C. Christensen & Assocs.,* 2016 U.S. Dist. LEXIS 168440, *15
> (N.D. Ill. Dec. 6, 2016).

The court concluded that the creditor's obligation to send periodic

statements ended once it ceased collections efforts or assigned the account.

*Id*. at *16.

*Bunce v. Portfolio Recovery Assocs*., LLC, 2014 U.S. Dist. LEXIS

159679, *3, 2014 WL 5849252 (D. Kan. Nov. 12, 2014) came to the same

conclusion regarding waiver:

> "Waiver of further interest charges is not evidenced by the
> cessation of monthly statements. While such a cessation *may*

occur when a lender waives further interest charges, it may also happen if the creditor decides the debt is uncollectible, it has commenced a delinquency action, additional statements are precluded by statute, or if it sells the debt." *Id.*

The Court also stated that "[t]he plaintiffs' allegations fail to present a plausible basis for inferring any waiver." *Id.* at \*4. The Court concluded that alleging a lack of periodic statements does not state a claim on which relief can be granted. *Id*; *see also Fuge v. Delta Outsource Group, Inc.*, No. 15CV10865, 2017 U.S. Dist. LEXIS 35047, 2017 WL 959017, at \*4 n. 6 (N.D. Ill. Mar. 13, 2017). (charge off of debt and ceasing periodic statements alone is insufficient to establish waiver of interest); *Stratton* at 600.

Callidus did not waive contractual interest. Thus, Defendants' request for contractual interest, which was awarded by the Court, did not violate the FDCPA.

### D. Heroux's Claims Regarding Statutory Interest Are Unfounded.

Heroux claims that Defendants were seeking statutory interest, but this conclusion lacks support. At no time did Defendants state that they were seeking "statutory interest."

Heroux references Minn. Stat. § 549.09 which is inapposite to this case. Callidus sought contractual and not statutory interest and thus § 549.09 does

not apply.[5]  Additionally, Minn. Stat. § 491A.01, subd. 3(a) governs conciliation court proceedings, not proceedings in District Court; thus it is not relevant to the underlying state district court action.  Finally, § 549.09 and the accompanying cases cited by *Heroux* specifically dealt with awards for non-contractual, pre-award interest prior to judgment.[6]  Pre-verdict interest was not requested by Callidus.

## IV.   THIS   COURT   SHOULD   DISMISS   HEROUX'S   CLAIMS RELATED TO AWARDED COURT COSTS.

Affidavit costs of $3.00 were specifically requested and granted by the state court; thus, a federal court review of that ruling is prohibited by *Rooker-Feldman* or otherwise barred by issue or claim preclusion.  Furthermore, this Court should dismiss Heroux's claims as they relate to the affidavit costs as Callidus was legally entitled to a $5 cost under Minn.  Stat. § 357.17 for each affidavit.  Pursuant § 357.17 and Minn. R. Civ. P. 54.04, Defendants filed a Declaration with the Court detailing the costs sought to be granted by the state court.  (Answer Ex.A. pp.50-51.)  Heroux asserts that only one affidavit was filed (affidavit of service) and ignores that two declarations were filed.

---

[5] Callidus requested and received post-judgment interest pursuant to Minn. Stat. § 549.09 – "Judgment shall be entered … in the amount of $2,881.02, which shall be subject to the statutory judgment interest rate."  Answer Ex. A at 59.

[6] Plaintiff's quote from *Poehler* excludes language changing its entire meaning. The Court in *Poehler* stated that § 549.09 "unambiguously provides for preaward interest on all awards of pecuniary damages that are not specifically excluded by statute…"

(*Id*. pp.5, 17-18, 50-51.)   Furthermore, in his Complaint, Heroux concedes that an affidavit was filed with the state court entitling Defendants to a $5 cost.   Thus, Heroux's claims as they relate to affidavit costs should be dismissed.

## V.   HEROUX'S HYPER-TECHNICAL ALLEGATIONS RELATED TO THE NAMES OF HSBC AND CALLIDUS SHOULD BE DISMISSED.

In Heroux's Complaint, a number of allegations regarding the name of the original creditor and Callidus are made that should be dismissed by this Court. First, Heroux makes the nonsensical allegation that Messerli erroneously named the state court Plaintiff "Callidus Portfolio Management as successor in interest to HSBC Bank N.A." when there is no business entity precisely called "Callidus Portfolio Management as successor in interest to HSBC Bank N.A."   Next, Heroux states that Messerli violated the FDCPA when it did not include "Inc." in the name of the business, identifying the creditor as "Callidus Portfolio Management" rather than "Callidus Portfolio Management, Inc." Heroux continues with this same bizarre reasoning stating that Messerli violated the FDCPA by identifying the original creditor as HSBC Bank N.A. rather than HSBC Bank NV, N.A.[7]

---

[7] The billing statements sent to Heroux identify that his Menards card was "issued by HSBC" and the Terms identify HSBC Bank Nevada N.A. and HSBC Bank N.A. as affiliates by common ownership.  Answer Ex. A at 30; Ex. B at 2.

Even if this Court were to conclude that these identifications were technically false, case law is clear that Heroux cannot prevail under the FDCPA for a mere technical violations that do not mislead the consumer. The FDCPA is not concerned with "mere technical falsehoods that mislead no one." *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010). Furthermore, "[p]ermitting claims based on such technical deficiencies to go forward would reflect "a false, narrow, and overly mechanical reading of the FDCPA." *Lindbergh v. Transworld Sys.*, 846 F. Supp. 175, 181, 1994 U.S. Dist. LEXIS 3317, *18 (D. Conn. 1994).

Heroux claims that titling the case "Callidus Portfolio Management as successor in interest to HSBC Bank N.A." was misleading.  However, by listing the original creditor, HSBC Bank N.A., in the caption of the state court Complaint, it was Messerli's intent to assist Heroux in identifying the source of his financial obligation which was assigned to Callidus (appreciating that he may not recognize the assignee.)  Under Heroux's theory, there is no single entity named "Callidus Portfolio Management Inc., and Messerli & Kramer, P.A." yet he listed both as a singular Defendant in his Complaint. Heroux's claims are hyper-technical.

Likewise, it is not necessary to include the "Inc." on Callidus' business name for the consumer to be able to identify the creditor.  *See Credit Bureau v. Todor*, *supra*.  Such a claim is precisely the type of claim the Sixth Circuit

Court warns against in *Fed. Home Mortgage Corp. v Lamar*, 503 F. 3d 504, 511 (6th Cir. 2007) citing *Jacobson v. Healthcare Fin. Servs.,* 434 F. Supp. 2d 133, 2006 U.S. Dist. LEXIS 36361 (E.D.N.Y. 2006), stating:

> "Ironically, it appears that it is *often the extremely sophisticated consumer who takes advantage of the civil liability scheme defined by this statute, not the individual who has been threatened or misled.* The cottage industry that has emerged does not bring suits to remedy the "widespread and serious national problem" of abuse the Senate observed in adopting the legislation…Rather, the inescapable inference is that the judicially developed standards have enabled a class of professional plaintiffs . . . . rather than simply pay what he owes – [a consumer] repairs to his lawyer's office to vindicate a perceived "wrong." '[T]here comes a point where this Court should not be ignorant as judges of what we know as men." *Id*. (internal citations omitted).

The Court in *Credit Bureau v. Todor (In re Todor),* No. 6:15-cv-01120-AA, 2016 U.S. Dist. LEXIS 41083, at *2 (D. Or. Mar. 29, 2016) concluded that omissions from the titles of legal entities are not materially misleading.  In *Todor*, the Court held that the omission of "Inc." was not materially misleading when the caption and other pleadings failed to include the word from the entity's name "Josephine County, Inc."  In *Todor*, the Court definitively stated: "I do not find that the mere omission of 'Inc.' from Credit Bureau's name in the small claims complaint to be deceptive or misleading as a matter of law."  *Id*. at *4.  The Court went on to state that even if the omission were to be constructed as even "slightly misleading," that it was not

material, insinuating that the omission of "Inc." was "nothing more than a technical falsehood that misled no one." *Id*.

The case of *Tourgeman v. Collins Fin. Servs.* involved a debt collection company that incorrectly named two different creditors, "American Investment Bank, N.A." when the creditor was in fact "CIT Online Bank." 755 F.3d 1109, 2014 U.S. App. LEXIS 11940, 2014 WL 2870174 (9th Cir. Cal. June 25, 2014). The facts in *Tourgeman* are substantially distinguishable from the case at hand because here the names were related affiliates. The *Tourgeman* court did not hold that every misstatement of the original creditor would be misleading, but that stating a substantially different creditor would be materially misleading. *Id*.

Heroux's allegations related to the slight variations in identification of the legal entities would not materially mislead even the most unsophisticated debtor. Accordingly, Defendants request that this Court dismiss Heroux's claims in their entirety.

## VI.    THE DISCOVERY SERVED BY MESSERLI WAS NOT CONFUSING OR MISLEADING.

Heroux's allegations regarding the discovery are barred under claim preclusion, issue preclusion and the *Rooker-Feldman* doctrine. Heroux makes a number of allegations related to the discovery; however, Judge Robiner reviewed the discovery and documents related to Heroux's account

with HSBC Bank N.A., identified no issues, and entered judgment in favor of Callidus.  (Answer Ex.A. pp.56-59.)

### A. Heroux's Claims Are Distinguishable From *Dakowa*.

Heroux cites to the Court's order in *Dakowa v. MSW Capital, LLC*, No. 16-2753 ADM/FLN, 2017 U.S. Dist. LEXIS 23211, at *15 (D. Minn. Feb. 17, 2017) to support his discovery claims.  The two state court cases at issue here[8] had distinct procedural postures.  In *Dakowa*, the state district court Judge denied the creditor's request for summary judgment stating that the discovery in that case was <u>alleged</u> to be confusing or misleading (a fact the court accepted as true because of the stage of the litigation *i.e.* summary judgment.)  To the contrary, in Heroux's state court case, the state district court Judge has reviewed the discovery and granted judgment in favor of the creditor, Callidus.

In *Dakowa*, the Court relied upon *McCollough v. Johnson, Rodenberg & Lauinger*, 610 F. Supp. 2d 1247 (D. Mont. 2009) for the proposition that requests for admission were asked that Defendant knew were false.  In *McCollough*, clear evidence was presented to the court that the creditor **knew** three months prior to sending the discovery that the debt was not only

---

[8] The two distinguishable state court cases are *MSW Capital LLC v. Mahmoud Dakowa*, Court File No. 02-cv-16-128 in Anoka County District Court and *Callidus Portfolio Management as successor in interest to HSBC Bank N.A. v. Heroux,* Court File No. 27-cv-17-5014 in Hennepin County District Court.

time barred but that a payment had not been made in 2014; yet, a request for admission asked the consumer to admit he had. *Id.* at 1255. Here, there is no evidence that Messerli knew that the requests for admissions were false. In fact, the state district court agreed with Messerli in its Order for Judgment, confirming the truth of the requested admissions. *(*Answer Ex.A.)

As noted in the Court's Order in *Dakowa*, the discovery issue was not fully briefed. *Id.* at *15. In *Dakowa*, Heroux's attorney brought a multitude of unfounded claims against the creditor and Messerli (like herein) most of which were dismissed by the Court. In preparing its motion to dismiss, counsel for Defendants failed to adequately brief what it considered an unsupported claim. As a result, vital precedent involving the discovery claim was not brought to the Court's attention. The following analysis explains why Heroux's discovery claims in this action must fail.

### B. The Use of The Term "Interlocking Discovery" Is Not Violative of the FDCPA.

The word "interlocking" is not a confusing word and is commonly used in the English language to mean connected, *e.g.* the puzzle has 500 interlocking pieces. Thus the combination of words Interlocking Discovery simply means connected discovery: *i.e.* the Requests for Admission are connected to the Interrogatories and are also connected to the Request for Production of Documents. Heroux's attorney has frequently used similar

discovery as have many other attorneys across the nation.  The word "interlocking" is also a legal term, which can be used in Court pleadings. Courts have consistently held that attorneys can use legal terms or "legalese" in drafting legal documents to pursue claims against a consumer.  *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 599, 2009 U.S. App. LEXIS 7042, *28, 2009 FED App. 0136P (6th Cir.), 17 (6th Cir. Ohio 2009) ("We must permit [the collector]  some leeway for the use of legal terms of art and other language that might be difficult for the least-sophisticated consumer to understand.")  A search of the term "interlocking" in Lexis Nexis yielded search results of 8,808 cases in which the term "interlocking" was used. The same search revealed that the term "interlocking" was used over 10,000 times in various briefs, pleadings, and motions.

Heroux also argues that the term is misleading and confusing because the term "does not exist under the Minnesota Rules of Civil Procedure."  Heroux's own attorney frequently uses pleadings that "do not exist under the Minnesota Rules of Civil Procedure."  Not every pleading,

in order to be permitted, must be a form proscribed by the Rules of Civil Procedure[9].

Furthermore, the Court should dismiss Heroux's claim as it relates to the title of the document as Heroux has failed to state how the title "interlocking discovery" was materially misleading. Namely, Heroux has failed to plausibly allege how the title of a document could have "undermined his ability to intelligently choose his action regarding his debt." *Coyne v. Midland Funding*, LLC, No. 17-cv-500 (PAM/SER), 2017 U.S. Dist. LEXIS 113371, at *12 (D. Minn. July 20, 2017); *Donohue* at 1034.

### C. Requests for Admission Relating to the Bill of Sale Do Not Violate the FDCPA.

Heroux's allegations regarding Messerli's request for admission about the bill of sale should also be dismissed. While Heroux makes generalized statements that the Requests for Admission sent were misleading, He only addresses one actual request for admission in his Complaint. Heroux's complaint fails to state how the requests for admission as a whole are misleading. *See Jones v. Inv. Retrievers*, LLC, 2011 U.S. Dist. LEXIS 44138, 2011 WL 1565851 at *6 (M.D. Pa. Apr. 25, 2011) (holding that '[n]o facts are

---

[9] "The following forms are intended for illustration only. They are limited in number. No attempt is made to furnish a manual of forms." Minn. R. Civ. Pro., Rule 84, Appendix.

alleged that suggest any abusive conduct (**a request for admission is not oppressive**,')"); *see also Washington v. Brumbaugh & Quandahl, P.C., LLO*, No. 8:15-CV-444, 2017 U.S. Dist. LEXIS 154425, at *19-20 (D. Neb. Sep. 19, 2017) (holding that "the Court has found no authority to suggest that a debt collector is prohibited from seeking admissions whenever a *pro se* debtor has filed a general denial to the underlying complaint. That result would significantly undermine the purpose of such pretrial discovery, which, as a general matter, is to "promote both efficiency and economy in resolving disputes," *citing* 8B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2252 (3d ed. 2010).)

Heroux's only specific objection to the requests for admission served upon him is that the Bill of Sale was inaccurate because it did not show a complete chain of title establishing the transfer of his account from HSBC Bank N.A. to Callidus.  Oddly, Heroux admits that the Bills of Sales establish the chain of ownership; namely, HSBC to United Debt Holdings to NCEP to Diverse Funding to Callidus.  (Compl. ¶21; Answer Ex.A p.57.) Likewise, the state district court relied upon the same Bill of Sale referenced in the requests for admission to conclude that Heroux's account was legally transferred and assigned from HSBC Bank to Callidus Portfolio Management.  *(*Answer Ex.A p.58.)  Perhaps Heroux is arguing that the requests for admission should have stated "Bills of Sales" or

included HSBC Bank Nevada N.A.  Nonetheless, "[p]ermitting claims

based on such technical deficiencies to go forward would reflect "a false,

narrow, and overly mechanical reading of the FDCPA." *Lindbergh v.*

*Transworld Sys.,* 846 F. Supp. 175, 181, 1994 U.S. Dist. LEXIS 3317, *18

(D. Conn. 1994).  Heroux's arguments are not compelling and the least

sophisticated debtor would not be misled.  *See Scheuer v. Jefferson Capital*

*Sys., LLC*, 43 F. Supp. 3d 772, 780 (E.D. Mich. 2014) ("The standard

precludes FDCPA liability for a communication that could deceive only a

lawyer closely parsing it like a municipal bond offering. Thus, when

applying the least sophisticated debtor standard, a court does not read the

subject collection notice with the astuteness of a Philadelphia lawyer, but

instead the court gives it a common sense appraisal." (internal citations

omitted))

Notwithstanding the hyper-technical nature of Heroux's claim, this

Court should additionally dismiss his claim as he fails to state a claim on

which relief can be granted, *i.e.* if the consumer did not believe the bill of sale

to be accurate he could have just denied the request.  *Paz v. Freedman*

*Anselmo Lindberg LLC*, No. 14-cv-10495, 2015 U.S. Dist. LEXIS 129626, at

*9 (N.D. Ill. Sep. 25, 2015) (Debtor's claims relating to the requests for

admission were dismissed.)  In *Paz*, the debtor claimed that the requests for

admissions were false and misleading; specifically, the debtor stated (as

Page 34

Heroux states) that the requests asked her to admit statements which the debtor knew or should have known were false. *Id*. In *Paz*, the debtor took particular issue with the request that asked her to admit that the creditor was the proper party to bring the claim. *Id*. The Court noted that the debtor failed to state a claim as her arguments lacked legal or factual basis to state that the defendants "knew or should have known the requests for admissions were false," holding that the debtor's general denial in her answer did not create a situation in which the defendants were banned from requesting information during discovery. The Court accurately noted that the debtor's denial that Portfolio was the proper party in interest did not make the statement in the requests for admission false. *Id* at *9. The Court went on to conclude:

> "Indeed, whether Portfolio is a proper party in that action is a legal question which requires judicial determination notwithstanding a party's affirmance or denial of the issue. Further, the statement is not inconsistent with Paz's rights to dispute the validity of the debt. Asking Paz to admit this statement, or any fact relevant to the litigation, implies that she can refuse to admit (*i.e.*, deny) the fact, and leaves open that opportunity. Accordingly, on its face and in context the statement is not misleading or deceptive, even to the unsophisticated but reasonable consumer, and thus is not false for purposes of § 1692e." *Id* at *9.

Like the facts in *Paz*, Heroux's allegation that the Bill of Sale is not the correct bill of sale was a legal question determined by the state court to be accurate. *(Answer Ex.A p.57.)* Messerli's request asking Heroux to admit

that the bill of sale is genuine allows Heroux to admit or deny the allegation. The request itself is not materially misleading or deceptive.

The Court in *Paz* also addressed Heroux's general allegations that the requests for admission as a whole were false, deceptive or misleading, stating:

> "The Court further finds that none of the remaining requests to admit form the basis of an actionable claim under the FDCPA. It would defy common sense for this Court to hold that a plaintiff's discovery request in a collection action could rise to the level of a false, deceptive or misleading means to collect a debt, or an unfair or unconscionable act under the FDCPA simply because it requests information about the alleged debt in furtherance of the lawsuit. *See, e.g., Bentrud v. Bowman, Heintz, Boscia & Vician, P.C.*, 794 F.3d 871, 875 (7th Cir. 2015). *Id.* at *10.

Minnesota Rules of Civil Procedure, Rule 36.01 states:

> "A party may serve upon any other party a written request for the admission … **including the genuineness of any documents described in the request**." (emphasis added.)

Messerli followed Minnesota law, asking Heroux questions in furtherance of the state court action regarding the genuineness of a document.  Like the Court in *Paz*, this Court should dismiss Heroux's claims as they relate to the requests for admission.

## D. Discovery Definitions Used In The State Court Litigation Are Not Violative of the FDCPA.

This court should also dismiss Heroux's allegations related to the definitions used in the discovery, which were designed to help the consumer

answer discovery.  The discovery definitions included language taken

verbatim from the Minnesota Rules of Civil Procedure, Rules 26, 33, 34 and

36, that gave statutory instructions as to how to answer discovery and

Heroux's rights and responsibilities in answering discovery.  These

definitions included instructions that failure to answer the discovery in thirty

(30) days would deem the request for admissions admitted.  (Answer Ex.A

pp.19-37.)  *See also McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637

F.3d 939, 952, 2011 U.S. App. LEXIS 4072, *24-25 (9th Cir. Mont. 2011)

(holding that requests for admission violated the FDCPA where the requests

did <u>not</u> include an explanation that, under Montana Rule of Civil Procedure

36(a), the requests would be deemed admitted if McCollough did not respond

within thirty days.)

Prior to *Dakowa*, there was no case law that has ever held that

discovery is misleading, oppressive or unconscionable because the

instructions in the discovery were <u>too</u> detailed.  To the contrary, Courts have

held that discovery could mislead a consumer when it fails to include

definitions and instructions.  Courts have consistently held that attorneys

can use legal terms or "legalese" in drafting legal documents to pursue claims

against a consumer.  *Miller*, 561 F.3d at 599; *see also Grden v. Leikin*, 2010

U.S. Dist. LEXIS 3740, *15-16, 2010 WL 199947 (E.D. Mich. Jan. 19, 2010).

The Seventh Circuit's decision in *Beler v. Blatt, Hasenmiller, Leibsker &*

*Moore, LLC*, 480 F.3d 470 (7th Cir. 2007), which addressed a complaint's "confusing description" of a credit-card-debt transaction articulates the legal terms may be used in FDCPA pleadings. "[Not] everything a lawyer writes during the course of litigation must be stated in plain English understandable by unsophisticated consumers. However desirable that might be, it is not a command to be found in the FDCPA." *Id*. The least-sophisticated consumer standard does not require debt collectors to "dumb down" pleadings where the parties appear *pro se*. *Id*. "Section 1692e does not require clarity in all writings. What it says is that debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. A rule against trickery differs from a command to use plain English and write at a sixth-grade level." *Id*. at 473 (internal quotation marks omitted).

As such, this court should dismiss Heroux's claims as they relate to the definitions as the definitions were designed to help the consumer.

### E. Consumers Who Are Confused By Discovery Should Consult An Attorney For Representation In Legal Proceedings.

Pointedly, the law directs a consumer who is confused by a legal pleading to seek counsel. *See Benacquisto v. Am. Express Fin. Corp.*, No. 00-1980(DSD), 2014 U.S. Dist. LEXIS 95018, at *17 (D. Minn. July 14, 2014), *quoting In re VMS Ltd. P'ship Sec. Litig.*, 26 F.3d 50, 52 (7th Cir. 1994)

("when perplexed by the terms in a legal document, a prudent investor does not ring up another layman.  He calls a lawyer.")  Likewise, if one is confused by the tax code, one is not permitted to cease paying taxes, rather, one seeks a tax advisor.  Similarly, confusion regarding the criminal code does not excuse violating it.

If the consumer decides to proceed without counsel, the *pro se* party is still required to follow Court rules.  *Harmon Autoglass Intellectual Prop., LLC v. Leiferman (In re Leiferman),* 428 B.R. 850, 854 (B.A.P. 8th Cir. 2010)("*Pro se* parties are required to follow the rules.")  *Prestige Equip. Corp. v. Case Mach. Co., LLC*, No. 5:08 CV 2164, 2009 U.S. Dist. LEXIS 64235, at *4 (N.D. Ohio July 22, 2009) (holding that "[w]hile it is defendant's prerogative to represent himself, proceeding *pro se* does not relieve him of his obligation to follow the Federal Rules of Civil Procedure or his other obligations with respect to this lawsuit"); *see also* Minn. Gen. R. Prac. 1.04.  A *pro se* party cannot merely claim "confusion" for his failure to answer requests for admission, ignore court hearing notices, and failure to provide any argument at a summary judgment hearing.  *See Loger v. Loger*, 2014 Minn. App. Unpub. LEXIS 1033, *9 (Minn. Ct. App. Sept. 15, 2014) (court did not abuse its discretion in defaulting an action after a *pro se* party failed to provide required pleadings); *Briscoe v. Klaus,* 538 F.3d 252, 258-59 (3d Cir. 2008) (citing *Emerson,* 296 F.3d at 190-91) ("[a] pro se plaintiff is personally

responsible for the progress of his case.")  If Heroux found the discovery to be confusing, he could have denied the requests for admission, or he could have appeared at the summary judgment motion hearing and explained his confusion to the Court – instead, he did nothing.

## CONCLUSION

Heroux's Complaint fails to state a cognizable claim for relief under the FDCPA.  Heroux's allegations are barred under *Rooker-Feldman*, claim preclusion, and issue preclusion or are otherwise invalid for the reasons outlined herein.  Defendants respectfully request that the court grant Defendants' motion for judgment on the pleadings.

**MESSERLI & KRAMER PA**

Dated: January 26, 2018.          By: s/ Derrick N. Weber
                                  Derrick N. Weber, #241623
                                  Stephanie S. Lamphere, #396794
                                  3033 Campus Drive, Suite 250
                                  Plymouth, MN 55441
                                  Telephone: (763) 548-7900
                                  Facsimile: (763) 548-7922
                                  dweber@messerlikramer.com
                                  slamphere@messerlikramer.com
                                  ATTORNEYS FOR DEFENDANT MESSERLI &
                                  KRAMER P.A. AND CALLIDUS PORTFOLIO
                                  MANAGEMENT INC.