# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Jason Heroux,

      Plaintiff,

    v.

Callidus Portfolio Management Inc.,
and Messerli & Kramer, P.A.

      Defendants.

Civil File No. 17-cv-05132 (DSD/HB)

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff alleges six separate violations of the FDCPA[1] by Defendants committed in their state court collection efforts, including:

    (1) misrepresentations concerning the debt collectors' name and the name of the alleged original creditor (Complaint, ¶¶ 33-37);

    (2) attempts to collect costs not actually paid or incurred and misrepresentations about such unlawfully demanded costs (Complaint, ¶¶ 52 – 56.);

    (3) misrepresentations regarding entitlement to, and attempts to collect, pre-judgment interest not permitted under contract or Minnesota law (Complaint, ¶¶ 44 – 51);

    (4) service of "Interlocking Discovery" that was intentionally misleading, designed to discourage consumer responses, and the use of such

---

[1] The complaint alleged violations of 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(10), 1692f, and 1692f(1).

misleading discovery to seek judgment based on deemed admissions; (Complaint, ¶¶ 12– 41);

      (5) service of requests for admission seeking false admissions regarding Defendants' evidence; (Complaint ¶¶ 19-30); and

      (6) Defendant Callidus Portfolio Management Inc. ("Callidus") attempting to collect a consumer debt in Minnesota without holding the statutorily required license from the Minnesota Department of Commerce (Complaint ¶6).

Defendants filed a joint answer to the complaint, attempting to add over 70 pages of attachments to the record. Docket No. 10.  Defendants then filed this motion for judgment as a matter of law.  Docket No. 14. The parties submitted their joint Rule 26(f) report to the Magistrate Judge.  Docket No. 16. In that submission, Defendants ***admit*** that this Court has jurisdiction. *Id*. at 2, ¶3.

## I.    LEGAL STANDARD

This Court has explained the Rule 12(c) standard in a number of cases, including *Rest. Recycling, LLC v. New Fashion Pork, LLP*, No. 17-7(DSD/SER), 2017 U.S. Dist. LEXIS 109755 (D. Minn. July 14, 2017).

For each of the six alleged violations of the FDCPA alleged in the complaint, the complaint contains sufficient factual matter, when accepted as true, to state a claim to relief that is plausible on its face. **Defendants' motion is not a pleading challenge.**  Rather, Defendant alleges based upon its assertions that Plaintiff's claims fail as a matter of law.

To reach its argument, however, Defendants rely upon materials that were not cited or referenced in the Complaint. Defendants attempt to interject these materials into the record as exhibits to their answer.  This attempt lies at the intersection of two rules.  Rule #1: "The court does not consider matters outside of the pleadings under Rule 12(c)." *See e.g.*, *Recycling*, *4.  In fact, as recently explained by the Eighth Circuit in the Rule 12(b) context, considering such information without conversion to summary judgment is improper. *Demarais v. Gurstel Chargo*, *P.A.,* 869 F.3d 685, 696, fn.2  (8th Cir. 2017) .  As explained in Rule 12(d):

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.[2]

Defendants' strategy begs the question: Are documents attached to the answer, which are not mentioned or referenced in the complaint properly considered part of the pleadings? This requires, of course, application of Rule #2: "The court, however, may consider matters of public record and materials that do

---

[2] While it is correct, as stated in *Shahl v. United Stated Dep't of Agric.,* 327 F.3d 697 (8th Cir. 2003) that this Court has "complete discretion to determine whether or not to accept any material," consideration of materials outside the pleadings requires conversion to summary judgment and notice to the parties.

not contradict the complaint, as well as materials that are 'necessarily embraced by the pleadings.'" *See e.g.*, *Recycling*, *4.

Numerous courts have held that considering the exhibits without conversion to summary judgment is improper. *See e.g. Pochat v. State Farm Mut. Auto. Ins. Co*., 2008 U.S. Dist. LEXIS 85910 (D.S.D. 2008) ("Defendant attached documents to its answer. But "[d]ocuments attached to an answer are generally not properly treated as part of the pleadings for purposes of ruling on a motion to dismiss."); *Clark v. Chase Home Fin., LLC*, 2008 U.S. Dist. LEXIS 47295 (S.D.Cal. 2008); *Thomas v. Fin. Recovery Servs.*, 2013 U.S. Dist. LEXIS 19775, *6 (C.D. Cal. 2013); *cf.* 5C Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1371 (3d ed. 2017 Update) ("Courts are split over whether it is proper to consider exhibits attached to the answer in evaluating a Rule 12(c) motion where those documents are "not referenced in or attached to the complaint.").

The cases cited by Defendants do not dictate a different result. *Amisi v. Melick*, 2017 U.S. Dist. LEXIS 71456 (D.S.D. 2017) simply states that exhibits may be considered *not* that exhibits "**not referenced in or attached to the complaint**" should be considered. *Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 913 (8th Cir. 2002) simply states the uncontroversial rule that an exhibit ***attached to a complaint*** can be considered in a Rule 12(b)(6) motion.

*Blazek v. US Cellular Corp.*, 937 F. Supp. 2d 1003, 1016 (N.D. Iowa 2011)

reaches the same conclusion, including a citation to *Meegan*. [3]

Instead, the cases reflect a case-by-case analysis depending on the particular

documents attached to the answer, their veracity, and their relation to the

allegations in the complaint. *See e.g., In re Petters Co.*, 562 B.R. 391, 399 (Bankr.

D. Minn. 2016) ("Third, the documents attached to the Answer are not 'necessarily

embraced by the complaint.' Documents necessarily embraced by the complaint

are those which form the basis of a plaintiff's complaint or are integral to the

claim.").

There are two sets of documents that Defendants attempt to interject into the

"pleadings" by making them exhibits to their Joint Answer. Exhibit A contains

documents that were filed in the state collection action. A couple of these

documents – the complaint and the sworn Declaration that $3 was incurred and

paid for by Defendants to obtain affidavits for the state court proceeding – are

referenced in the Complaint and are thus properly considered by this Court. The

remaining documents in Exhibit A are not referenced in the complaint and should

not be considered simply because Defendants attached them to their answer.

---

[3] The language from *Blazek* that cites *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend* which is referred to by Defendants is an explanation of an "on the other hand" interpretation which is not adopted by the *Blazek* Court or the Eighth Circuit.

Exhibit B is an entirely different issue. Exhibit B is a blank application for a credit card.  Exhibit B was never submitted to the state court. *Compare* Answer, Ex. A *with* Answer, Ex. B.   Exhibit B does not contain Mr. Heroux's name, signature, or affirmation. Plaintiff challenges the validity, accuracy, and completeness of this document as a contract binding Mr. Heroux.

This is not a case that involves a dispute over the terms of the contract.[4] A contract is not mentioned in the complaint. An application for a credit card is not mentioned in the complaint.   The words "application" or "contract" never appear in the complaint.  Exhibit B should not be considered by this Court in a motion for judgment on the pleadings. *In re Petters Co.*, 562 B.R. at 399.

Moreover, Exhibit B conflicts with other documents put in the record by Defendant, providing for a default interest rate of 24.9%, while the account statement Defendants put in the record provides for a default interest rate of 27.99%.  *Compare* Ex. A, p. 4, *with* Ex. B, p. 31.  Moreover, the single account statement in the record does not reflect any use of the card by Plaintiff, which Defendants claim would show Plaintiff's assent to the terms and conditions.[5]  For

---

[4] Thus, *Young v. Principal Fin. Group, Inc.* 547 F.Supp. 2d 965 (S.D. Iowa 2008) and *Ferman v, Jenlis, Inc.*, 224 F. Supp. 2d 791 (S.D. Iowa 2016) are inapplicable cases from outside the FDCPA context.

[5] Defendants' argument is also wrong as a matter of law. "No credit card shall be issued except in response to a request or application therefore". 15 U.S.C.
(footnote continued)

these reasons, it would be inappropriate to grant Defendants' motion based on Exhibit B to the Answer, or even to consider it at this stage of the proceedings.

## II.   NEITHER *ROOKER-FELDMAN* NOR *RES JUDICATA* APPLIES TO THE INDEPENDENT FEDERAL CLAIMS IN THIS CASE.

Under recent Supreme Court precedent and Eighth Circuit case law applying it, *Rooker-Feldman* does not divest the Court of jurisdiction over Plaintiff's FDCPA clams.  Moreover, courts have consistently held that claim and issue preclusion do not foreclose subsequent federal FDCPA suits that, like this one, challenge the collection practices that led to state court judgments.  Accordingly, the Court should deny Defendants' Motion under Fed. R. Civ. P. 12(b)(1).

### A. *Rooker-Feldman* Does Not Apply.

Plaintiff's federal lawsuit constitutes a challenge to Defendants' collection practices under the FDCPA.  Plaintiff does not ask this Court to overturn the state court judgment.  *Rooker-Feldman* therefore does not apply.

In advancing Defendants' argument – that the Court lacks jurisdiction to disagree with any conclusion embodied in a state court judgment – Defendants urge the Court to misapply the *Rooker-Feldman* doctrine in defiance of the United States Supreme Court.  Tellingly, ***all*** of the "Eighth Circuit law" relied upon by

---

§1642. Creditors are required to disclose information regarding rates, fees, grace periods, balance calculations and other information to consumers before opening the subject credit card account. 15 U.S.C. §1637, ¶¶ (a), (c) and (d).

Defendants was handed down in the 1990s.  In 2005, however, the Supreme Court clarified the doctrine, cautioning that "[v]ariously interpreted in the lower courts, the doctrine has sometimes been construed to extend far beyond the contours of the *Rooker* and *Feldman* cases…."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005).

In *Exxon*, the Third Circuit had determined that *Rooker-Feldman* precluded jurisdiction because "ExxonMobil would be endeavoring in the federal action to 'invalidate' the state court judgment, 'the very situation'…'contemplated by *Rooker-Feldman*'s "inextricably intertwined" bar.'"  *Exxon*, 544 U.S. at 291 (quoting Third Circuit opinion).  The Supreme Court **reversed** the Third Circuit and commanded a narrower interpretation of the doctrine: "But neither *Rooker* nor *Feldman* supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment **on the same or related question** while the case remains sub judice in a federal court."  *Id*. at 292 (emphasis added).  The Supreme Court continued as follows:

> If a federal plaintiff presents some independent claim, **albeit one that denies a legal conclusion that a state court has reached** in a case to which he was a party…then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.

*Id*. at 293 (quotation omitted) (emphasis added).

Since *Exxon*, Courts have consistently exercised jurisdiction over federal

FDCPA challenges to state court collection practices, including collection practices resulting in a judgment in favor of the debt collector.  For example, in *Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 434 F.3d 432, 433-436 (6th Cir. 2006), the plaintiff alleged that the defendant violated the FDCPA by executing and filing a false, deceptive, or misleading affidavit in state court collection action.  The *Todd* defendant, like Defendants here, argued that *Rooker-Feldman* foreclosed federal jurisdiction because the plaintiff's FDCPA claim was inextricably intertwined with the state court's decision embracing the validity of the creditor's affidavit.  *Id*. Relying explicitly on *Exxon*, the Sixth Circuit disagreed, holding that the plaintiff had brought "an independent federal claim that [he] was injured by Defendant when he filed a false affidavit."  *Id*. at 436.

The Eighth Circuit has similarly narrowed *Rooker-Feldman* in light of *Exxon*.  In *Hageman v. Barton*, 817 F.3d 611 (8th Cir. 2016), the plaintiff asserted FDCPA claims based on, among other things, the debt collector's misrepresentation of the name of the creditor as "St. Anthony's."  *Hageman*, 817 F.3d at 613-14.  Yet the state court had already entered a judgment in favor of "St. Anthony's," thus implicitly holding that St. Anthony's was indeed the proper creditor.  *Id*.

Relying on *Exxon*, the Eighth Circuit held that *Rooker-Feldman* did not bar the plaintiff's subsequent FDCPA claims, noting that "[t]he doctrine is limited in

scope and does not bar jurisdiction over actions alleging independent claims arising from conduct in underlying state proceedings." *Hageman*, 817 F.3d at 614. The issue in the Eighth Circuit is not whether the plaintiff is attacking the conclusions embedded in the state court judgment, but "whether the plaintiff in federal court, in fact, ***seeks relief*** from the state court judgment." *Id*. (emphasis added). The *Hageman* Court explained the import of *Exxon* as follows:

> The Supreme Court clarified this distinction in Exxon Mobil Corp., when it rejected the broad application of the doctrine and confined application of the doctrine to federal actions seeking review of and relief from state court judgments…. In doing so, the Court stated the doctrine does not apply in federal cases that merely attack the legal conclusions of the state court without seeking relief from the state court judgment.

*Id*. at 615. *See also Skit Int'l v. DAC Tech. of Arkansas, Inc.*, 487 F.3d 1154, 1156-57 (8th Cir. 2007) ("A district court is not deprived of jurisdiction in every case in which a plaintiff seeks a result different from the one it obtained in state court. Rather, *Rooker-Feldman* is implicated in that subset of cases where the losing party in a state court action subsequently complains about that judgment and seeks review and rejection of it.").

Plaintiff's Complaint alleges violations of federal law in Defendants' debt collection practices, and nowhere in the Complaint does Plaintiff seek relief from the state court judgment. Thus, under *Exxon* and *Hageman*, federal jurisdiction exists.

Defendants ignore *Hageman* and insist that Plaintiff's independent federal claims are barred even if they so much as disagree with an "implicit" determination by the state court.  Docket No. 14 at 10.  In *Hageman*, however, the Eighth Circuit acknowledged, but rejected, such an expansive application of *Rooker-Feldman*:

> Barton cites several district court cases from California in addition to a Seventh Circuit case for the proposition that, even after *Exxon*, the *Rooker-Feldman* doctrine may find broad application in the context of FDCA suits that do not actually seek relief from state court judgments….While Barton is correct that these cases appear to maintain a broad application of *Rooker-Feldman* even after *Exxon Mobil Corp.*, we find them at odds with our own cases as cited above.

*Hageman*, 817 F.3d at 615 n.5.

Indeed, federal courts have rejected the application of *Rooker-Feldman* to FDCPA claims similar to Plaintiff's.  For example, in *Wyles v. Excalibur One, LLC*, 2006 U.S. Dist. LEXIS 64203, *2 (D. Minn. 2006) (Tunheim, J.), a debt collector sued a debtor in state court seeking, among other things, interest and attorneys' fees, obtaining a state court judgment for the full amount demanded.  *Id*. The debtor later sued the collector in federal court, arguing that the debt collector was not entitled to the interest or attorneys' fees demanded and obtained in the state court judgment.  *Id*.

The debt collector argued, like Defendants in this case, that *Rooker-Feldman* barred the FDCPA lawsuit because the state court had entered judgment awarding the very fees and interest at issue in the FDCPA case.  The Court disagreed,

holding that "because Wyles is asserting an independent claim under the FDCPA, the *Rooker-Feldman* doctrine does not divest this Court of subject matter jurisdiction in this case." *Wyles*, 2006 U.S. Dist. LEXIS 64203 at *5.

In exercising jurisdiction, Judge Tunheim approvingly discussed *Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 434 F.3d 432 (6th Cir. 2006) (discussed above) as well *Senftle v. Landau*, 390 F. Supp. 2d 463 (D. Md. 2005), for the proposition that "[b]ecause an FDCPA plaintiff is not challenging the validity of the debt, but rather the collection practices of the creditor, a claim under the FDCPA is an 'independent claim' from a state court action to collect a debt, and Federal courts have jurisdiction over the case." *Id*. at *4. *See also Anderson v. Gamache & Meyers, P.C.*, 2007 U.S. Dist. LEXIS 39446, *4-5; 17 (E.D. Mo. 2007) (*Rooker-Feldman* does not bar FDCPA claim for filing of false affidavit and seeking fees and interest that were awarded in state court judgment).

Here, as in the post-*Exxon* cases cited above, Plaintiff does not seek relief from the state court judgment.  Rather, Plaintiff challenges Defendants' collection practices – seeking interest not allowable by law; using deliberately misleading discovery to encourage a default; seeking admissions of false statements; making false statements about costs "incurred and paid;" and misidentifying the original creditor – as violating the FDCPA.  Thus, the Court has jurisdiction and must deny Defendants' Motion.

### B.   *Res Judicata* **Does Not Apply.**

*Res judicata* encompasses claim preclusion and issue preclusion arising out of previous judgments.  *See Taylor v. Sturgell*, 533 U.S. 880, 892 (2008).  As discussed above, however, the FDCPA gives rise to federal claims and issues that are independent from underlying state court collection actions.  *See*, *e.g.*, *Peterson v. United Accounts, Inc.*, 638 F.2d 1134, 1137 (8th Cir. 1981) ("[a]lthough there is some overlap of issues raised on both cases as a result of the defenses raised in the state action, the suit on the debt brought in state court is not logically related to the federal action initiated to enforce federal policy regulating the practices for the collection of such debts").

### 1.   *Claim Preclusion Does Not Apply.*

In Minnesota, claim preclusion "bars a second suit for the same claim by parties or their privities."  *Kaiser v. N. States Power Co.*, 353 N.W.2d 899, 902 (Minn. 1984).  Here, the state court signed Defendants' proposed order, based on Defendants' unopposed representations that they were entitled to prejudgment interest at 6%, that they had actually incurred and paid $3.00 for "affidavits," and that Plaintiff had failed to respond to discovery.  These facts do not trigger claim preclusion.

First, the state court did not make any determination as to whether the discovery requests were misleading or oppressive, or whether they involved false

statements.  Rather, the state court's order merely references Plaintiff's failure to respond.  Plaintiff's federal claims are based upon misconduct *that led to* the failure to respond, namely, the deliberately confusing nature of the requests, and the false statements contained in them.  The state court did not address the issues, explicitly or implicitly.

Nor does claim preclusion apply to Plaintiff's claims based on the false representations about the entitlement to interest or about the payment of $3.00 for affidavits.  Indeed, while Defendants now claim that they sought and received *contractual* post charge-off interest from the state court, even though there was no contract in the state court record.  *Compare* Answer, Ex. A, *with* Answer, Ex. B. Despite Defendants not having put *any* agreement – even an unsigned one – into the state court record, the state court's order (drafted by Defendants) nevertheless purports to be based upon the "contract submitted by Plaintiff."  Answer, Ex. A, p. 58. This makes abundantly clear that the claims raised herein were not considered or resolved by the state court – the state court merely accepted representations – many of them false – from Defendants.

In any event, the claims in this case are based on false representations and improper collection under the FDCPA, and are therefore not the same claims as asserted in state court. Tellingly, Defendants do not cite a single case in which a subsequent FDCPA case was dismissed in light of the alleged preclusive effect of a

state court judgment in a collection case.

In fact, the courts in the Eighth Circuit consistently hold that FDCPA claims challenging collection practices that led to state court judgments are ***not*** subject to claim preclusion.  For example, in *Powers v. Credit Mgmt. Servs.*, 313 F.R.D. 103 (D. Neb. 2016), class members asserted FDCPA claims based on the debt collector's collection complaints, which included amounts for prejudgment interest and attorneys' fees.  *Powers*, 313 F.R.D. at 106.  Despite the entry of state court judgments awarding those amounts, the Court denied a motion to dismiss based on claim preclusion, holding that the "FDCPA…claims exclusively address CMS's conduct in attempting to collect a debt."  *Id*. at 115.  Accordingly, "[a]lthough the claims are related to the same underlying transaction, the legal issues and evidence related to the claims are distinct."  *Id*.

Similarly, in *Anderson v. Gamache & Myers, P.C.*, 2007 U.S. Dist. LEXIS 39446 (E.D. Mo. 2007), the plaintiff claimed that the debt collector violated the FDCPA in a state court collection proceeding by making false statements in an affidavit, by seeking unauthorized interest and fees, and by bringing its action outside the statute of limitations period.  *Gamache* at *4-5.  The debt collector obtained a default judgment against the plaintiff in the underlying collection case.  *Id*. at *4.  The Court rejected the application of claim preclusion, with a holding that applies equally to the case at bar:

> Moreover, the cause of action which Plaintiff seeks to litigate in the
> matter now under consideration is not the same cause of action upon
> which the State court entered its default judgment.  The court finds,
> therefore, that although the parties in the state action were the same as
> the parties in the matter under consideration and although the State
> court issued a final judgment as to all matters before it, res judicata is
> not applicable to Plaintiff's allegations….

*Id*. at 18-19.

Finally, in *Worley v. Engel*, 2017 U.S. Dist. LEXIS 177375 (D. Minn. 2017)

(Magnuson, J.), the plaintiff claimed that the defendant debt collection attorney

had violated the FDCPA in his efforts to collect alleged unauthorized rent from

her.  *Worley* at *1.  The debt collector argued that in the action for unpaid rent the

state court had ruled in his client's favor (after which the plaintiff paid the disputed

rent), thus precluding the subsequent FDCPA claim.  Id. at *5-6.  The Court held

that  "Because [the FDCPA] Complaint raises different claims from the state-court

claims, claim preclusion cannot apply."  *Id*. at *6.

The *Worley* Court further noted that while the plaintiff in the underlying

state court proceeding was the debt collection attorneys' *client*, the defendant in the

FDCPA case was the debt collection attorney *himself*.  *Worley* at *7.  The Court

examined whether the attorney-client relationship was sufficient for the debt

collection attorney to be "in privity" with his client for *res judicata* purposes,

concluding that it was not.  *Id*. (citing *Boldon v. Messerli & Kramer, P.A.*, 92 F.

Supp. 3d 924, 931-32 (D. Minn. 2015)).  Judge Magnuson then held that

"[b]ecause the parties are not in privity, res judicata cannot apply…." *Id*. Thus, even if the Court were to find the claims against Defendant Callidus to be precluded, the case should nevertheless proceed against Defendant Messerli & Kramer, P.A.

## 2.   *Issue Preclusion Does Not Apply*.

For similar reasons, Plaintiff's FDCPA claims are not barred by issue preclusion. Issue preclusion requires that the issue be "***identical*** to the one in the prior adjudication." *Nelson v. Am. Fam. Ins. Grp.*, 651 N.W.2d 499, 511 (Minn. 2002) (emphasis added).

Defendants fail to cite a single FDCPA case for the proposition that a challenge to collection activities under the FDCPA is precluded by entry of a state court judgment. Plaintiff has provided ample case law in which FDCPA claims like those asserted here were permitted to proceed despite the existence of a state court judgment ostensibly "justifying" the debt collector's tactics. Courts in this Circuit reject the application of issue preclusion under these circumstances. *See Powers v. Credit Mgmt. Servs.*, 313 F.R.D. 103, 115 (D. Neb. 2016) (no issue preclusion for FDCPA case based on collection activity leading to state court judgment because "the legal issues and evidence related to the claims are distinct"); *Worley* at *6-7 (denying motion to dismiss based on issue preclusion). The same result is appropriate here.

Moreover, issue preclusion requires that a party have "a full and fair opportunity to be heard on the adjudicated issues."  Docket No. 14 at 8.  Here, the Court must accept as true Plaintiff's allegations that Defendants' violations of the FDCPA (principally its deliberately confusing discovery requests) were the very thing that prevented him participating in the lawsuit, thus depriving him of his "full and fair opportunity to be heard."  *See* Complaint, ¶¶ 12-31.

## III.   THE PLEADINGS SUFFICIENTLY ALLEGE THAT CALLIDUS PORTFOLIO MANAGEMENT INC. IS A DEBT COLLECTOR.

Plaintiff has alleged that Callidus "uses an instrumentality of interstate commerce or the mails in a business the principal purpose of which is the collection of debts."  Complaint, ¶ 5.  For its part, Callidus admits that it is "an entity that purchases debts and sends them to a third party for collection."  Answer, ¶ 6.  As is clear from the Complaint and the Answer with attached Exhibits, the "third party" to whom Callidus sends its acquired debts for collection is its law firm, Messerli & Kramer, P.A.  *See* Answer, ¶ 6.

Callidus further states, contrary to the allegation in Paragraph 5 of the Complaint, that it "does not use any instrumentality of interstate commerce or the mail to collect debt."  *Id*.  Defendants' statements in this regard are false as a matter of public record.  For example, in Hennepin County Court File No. 27-CO-16-8459, Callidus directly sued a consumer in conciliation court, with no attorney intermediary.  Moreover, Callidus (the company with allegedly zero employees),

appeared in the case through its president, Cory D. Johnson.  The affidavit of service in that case, signed and publicly filed by Mr. Johnson, indicates that Mr. Johnson himself sent the Summons and Complaint to the consumer ***via certified mail*** as well as appeared at the hearing.  This example perfectly illustrates why this case is not appropriate for judgment on the pleadings.

Nevertheless, Defendants claim that Callidus is not a debt collector because it is a "passive debt buyer that purchases debt and forwards them to third parties such as Messerli to collect."  Docket No. 14 at 14.  As set forth above, this is not true, as Callidus has indeed engaged in its own debt collection efforts.  Putting the factual misstatement aside, Defendants rely on three[6] District Court cases: *Kasalo v. Trident Asset Mgmt, LLC*, 53 F. Supp. 3d 1072 (N.D. Ill. 2014); *Knowles v. United Debt Holdings, LLC*, 2015 U.S. Dist. LEXIS 124596 (E.D. Cal. 2015); and *McAdory v. M.N.S. & Assoc., LLC*, 2017 U.S. Dist. LEXIS (D. Or. 2017).

The alleged debt collectors in the three District Court cases Defendants rely upon share one characteristic that distinguishes them from Callidus – they purchase debts then engage other *non-attorney* debt collectors to make contact with consumers.  *See Kasalo*, 53 F. Supp. 3d at 1076-88 (debt buyer places debt with

---

[6] In *Capozio v. JP Morgan Chase Bank, NA*, 2017 U.S. Dist. LEXIS 184070 (E.D. Pa. 2017) the plaintiff did <u>not</u> allege in the Complaint that JP Morgan Chase's principal purpose was debt collection.  *Id.*, *9.

non-attorney debt collector who corresponds with consumer); *Knowles*, 2015 U.S. Dist. LEXIS at *2 (same); *McAdory*, 2017 U.S. Dist. LEXIS at *2 (same).

Defendants do not cite any case in which a would-be "debt collector" was able to escape its obligations under the FDCPA by hiring a law firm to sue consumers. Indeed, such a result would frustrate Congress's intent as expressed in the Act and interpreted by the United States Supreme Court and Eighth Circuit Court of Appeals. Collection litigation constitutes debt collection under the FDCPA. *See Hemmingsen v. Messerli & Kramer, P.A.,* 674 F.3d 814 (8th Cir. 2012)[7] (citing *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995)). Indeed, the Supreme Court has noted that "[t]o collect a debt or claim is to obtain payment or liquidation of it, either by personal solicitation or legal proceedings." *Heintz*, 514 U.S. at 294 (quoting Black's Law Dictionary 263 (6th ed. 1990)). Thus, in *Garcia-Contreras v. Block & Scott, PLLC*, 2010 U.S. Dist. LEXIS 126217, *17-24 (M.D.N.C. 2010), both the collection law firm ***and its debt-buyer client*** were found to have engaged in collection activity in the form of the filing of a collection action.

Unlike a "passive debt buyer" who chooses not to interact with consumers by placing debts with non-attorney third parties, Callidus hires lawyers to file

---

[7] It is worth noting that Messerli was the sole defendant in *Hemmingsen* because the collection lawsuit was brought on behalf of Discovery Bank, the original creditor.

lawsuits (when not suing consumers directly in conciliation court).  Congress did

not intend to allow would-be debt collectors to insulate themselves from liability

by hiring lawyers to bring lawsuits.  From the 1977 passage of the FDCPA, it has

always been a violation for a debt collector to commence a collection action

against a consumer in any district other than the one in which the consumer resides

or in which the contract was signed.  *See* 15 U.S.C. § 1692i.  Yet for the first nine

years of the FDCPA's existence, the Act "specifically excluded from the definition

of 'debt collector' 'any attorney-at-law collecting on a debt as an attorney on

behalf of and in the name of a client.'"  *Fox v. Citicorp. Credit Servs.*, 15 F.3d

1507, 1512 (9th Cir. 1994) (citing 15 U.S.C. § 1692a(6)(F) (repealed 1986)).  Given

that attorneys, not debt collectors, file lawsuits[8], Congress clearly intended to

impute the litigation collection activities of attorneys to their clients.  Any other

reading of the Act would render section 1692i superfluous for the first decade of

the Act's existence.

There are additional reasons why hiring a law firm to sue a consumer is

different from placing debts with other collection agencies for the purpose of non-

litigation collection activities.  The attorney-client relationship is special in that it

--------

[8] Indeed, as Defendants point out, "Callidus is not an attorney and is not permitted to serve legal pleadings or represent itself."  Answer, ¶ 9 (citing *World Champion Fighting, Inc. v. Janos*, 609 N.W.2d 263 (Minn. App. 2000)).

requires cooperation.  The Minnesota Rules of Professional Conduct provide that a lawyer "shall abide by a client's decisions concerning the objectives of representation and…shall consult with the client as to the means by which they are to be pursued."  Minn. R. Prof. C. 1.2(a).  Moreover, "[a] lawyer shall abide by a client's decision whether to settle a matter," and "shall…promptly notify the client of any decision or circumstance with respect to which the client's informed consent…is required," "reasonably consult with the client about the means by which the client's objectives are to be accomplished," and "keep the client reasonably informed about the status of the matter…."  Minn. R. Prof. C. 1.4(a).[9]

In sum, the District Court cases relied upon by Defendants are inapposite, because none of them suggest that suing consumers with legal representation is not "debt collection."  Plaintiff has pled that Callidus uses instrumentalities of interstate commerce in a business the principal purpose of which is the collection of debts.  Defendants have admitted that Callidus's business is based upon purchasing debts and collecting them through an agent, i.e., Messerli & Kramer.[10]

---

[9] Plaintiff does not cite these Rules to suggest that Defendant Messerli is violating them.  To the contrary, Plaintiff contends that Messerli is scrupulously adhering to them.

[10] While the parties agree that Callidus engages Messerli to sue consumers, Callidus does not identify anyone other than Messerli whom it engages to collect debts.  *See Skinner v. LVNV Funding, LLC*, 2018 U.S. Dist. LEXIS 2812, *9 (N.D. Ill. 2018) ("a company cannot avoid debt collector status under the FDCPA by
        (footnote continued)

While Callidus denies using interstate commerce, one is forced to wonder how Callidus manages to send the files relating to its purchased debts to Messerli & Kramer, P.A. for collection and to communicate with the law firm regarding the collection activity without using internet, telephone, mail, or highways, particularly given that Callidus's headquarters is not within shouting (or even walking) distance of Messerli & Kramer, P.A. (compare Answer, ¶ 6 with address in signature block).  In this respect, even putting aside the public court record putting the lie to Callidus's assertion, the Answer is not plausible.  The Court should deny the motion and permit discovery on this issue.

## IV.   DEFENDANTS ATTEMPT TO COLLECT 6% INTEREST WAS A VIOLATION OF 1692F(1) AS AN ATTEMPT TO COLLECT AN AMOUNT THAT WAS NOT DUE BY CONTRACT OR LAW.

Nowhere in the state court pleadings did Defendants indicate that they were seeking 6% *contractual* interest. No alleged contract was every submitted to the state court.  Rather, Defendants improperly collected 6% statutory interest that was not available as a matter of law.

As cited by Defendants in their motion, Minn. Stat. § 334.01, subd. 1, provides that "interest for any legal indebtedness shall be at the rate of $6 upon $100 for a year. . . ."  However, as a matter of law, §549.09, ***and not*** §334.01, is

conducting some business that is not debt collection").

not the applicable interest statute in Minnesota.  *See Best Buy Stores, L.P. v. Developers Diversified, Realty Corp.*, 715 F. Supp. 2d 871, 877-78 (D. Minn. 2010).[11]

The Minnesota Supreme Court recently removed any doubt regarding the applicable interest statute. *See Poehler v. Cincinnati Ins. Co.,* 899 N.W.2d 135 (Minn. 2017) ("In other words, section 549.09 provides preaward interest on all awards of compensatory damages that are not excluded by the statute.") The Minnesota Supreme Court rejected the logic of *Hogenso*n, a prior court of appeals decision that had limited the applicability of §549.09. *Id*.  ("Accordingly, we hold that Minn. Stat. § 549.09, subd. 1(b), unambiguously provides for preaward interest on ***all awards of pecuniary damages*** that are not specifically excluded by the statute, and does not restrict the recovery of preaward interest to cases or matters involving wrongdoing or a ***breach of contract***.") (emphasis applied).

Minn. Stat. §549.09 – the ***only*** applicable interest statute - does not apply to

---

[11] This Court reached a different result in *Woods v. K.R. Komarek, Inc. et. al.*, File No. 15-4155 (DSD/BRT), Docket No. 93 (D. Minn. May 26, 2017) based upon *Hogenson,* a court of appeals decisions prior to the Minnesota Supreme Court's decision in *Poehler* confirming that this Court's prior decision in *Best Buy* was correct. *See also Landholdings v. Auto-Owners Ins.*, 2018 Minn. App. LEXIS 116 (Minn. Ct. App. Feb. 12, 2018) (rejecting the application of *Hogenson* and noting that "The supreme court could have acknowledged that section 334.01 may, in some circumstances, 'otherwise' provide for preaward interest. But the Supreme Court in *Poehler* did not mention section 334.01."))

any case where the amount at issue is below the jurisdiction of the conciliation court under § 491A.01.[12]   Minn. Stat. § 549.09 (b) (4) ("Except as otherwise provided by contract or allowed by law, preverdict, preaward, or prereport interest shall not be awarded on the following: . . .(4) judgments or awards not in excess of the amount specified in section 491A.01"). The current amount specified in section 491A.01, subd. 3(A)  is "(1) $15,000; or (2) $4,000, if the claim involves a consumer credit transaction."  There is no dispute that the alleged debt sued upon was below this threshold.

Abandoning any claim that it is entitled to 6% statutory interest, Defendants attempt to shift to contractual interest.  There are two problems with this argument.  First, Defendants never argued for contractual interest in the state court proceeding and, in fact, never produced a contract. *Compare* Answer, Exhibit B *with* Answer, Exhibit A.

Second, the Complaint sufficiently pleads that Defendants have waived contractual interest.

### A. Defendants are estopped from claiming post-charge off contractual interest.

Pursuant to the Truth In Lending Act ("TILA"), HSBC Bank Nevada, N.A.

---

[12] Minn. Stat. §549.09 does not depend on the court in which the case is filed, but rather whether the amount in dispute is below the jurisdictional limit set forth in §491A.01.

cannot charge a cardholder any finance charge without transmitting to the

cardholder a periodic billing statement itemizing the finance charge added to the

account during the billing cycle. *See* 15 U.S.C.A. § 1637 (b); Complaint, ¶ 47.

TILA creates strict liability. *Smith v. Fid. Consumer Disc. Co.*, 898 F.2d

896, 898 (3rd Cir. 1990) ("TILA achieves its remedial goals by a system of strict

liability in favor of the consumers when mandated disclosures have not been

made."). The courts strictly enforce the technical requirements of TILA and

Regulation Z and Defendants are not at liberty to deviate from them. *Dryden v.

Lou Budke's Arrow Finance Co.*, 661 F.2d 1186, 1190 (8th Cir. 1981) ("[M]any of

the requirements of the Truth-In-Lending Act are technical in nature, and the Court

is not at liberty to deviate from them as it sees fit. Regulation Z unequivocally

requires that necessary disclosure shall be written and made together on one

document. The drafters of the legislation obviously felt that oral statements by

creditors or piecemeal disclosures are not adequate to ensure the consumer's

protection. Regardless of the wisdom or validity of that proposition, it is not this

Court's prerogative to substitute its own view for that of Congress.") (quoting

*Gennuso v. Commercial Bank & Trust Co.*, 566 F.2d 437, n.12 at 441 and n.23 at

443 (3rd Cir. 1977)).

As alleged in the Complaint, the HSBC Bank Nevada, N.A. and its assignees

failed to continue to send periodic statements showing the accumulation of interest

in the lengthy post charge-off period.  Complaint ¶ 46.  The facts alleged in the complaint must be taken as true in this motion to dismiss.

Therefore, the creditors are estopped from subsequently charging interest. Defendants concede that an assignee takes only those rights assignor possessed at the time of assignment. Docket No. 14 at 19. ("assignee acquires all rights assignor had at the time of assignments.")  Thus, Defendants never acquired rights to charge interest that HSBC Bank Nevada, N.A. , the original creditor, was estopped from charging.

## B. Defendants have waived any claim of post-charge off contractual waiver.

"By alleging in a complaint that a consumer owes interest that had in fact been waived, a debt collector may be able to secure a default judgment for an amount the consumer does not owe." *Stratton v. Portfolio Recovery Assoc., LLC*, 770 F.3d 443, 452 (6th Cir. 2014).  That is precisely what is alleged in the Complaint in this case.  According to Defendants' documents, HSBC Bank Nevada, N.A. charged off the account on November 30, 2011. Answer, Exhibit A at 37. Following that charge-off, Mr. Heroux did not receive any periodic statements showing the accumulation of interest on any HSBC Bank Nevada, N.A. account.  Complaint, ¶ 46.

Under the Federal Truth In Lending Act (TILA), creditors are required to mail consumers periodic statements for each billing cycle on which a financial

charge has been imposed. *See* 612 C.F.R. § 226.5(b)(2)(i). Accordingly, while HSBC Bank Nevada, N.A. and/or its successors may have held a right to collect interest against Mr. Heroux, their conduct in failing to send periodic statements after charge-off establishes a voluntary waiver of interest before the alleged sale of the account. They simply are not permitted to collect such interest as a matter of law, because they chose not to send periodic statements.

Callidus is bound by its alleged predecessors' waiver of interest, which occurred before Callidus' alleged acquisition of the account. Waiver is "the intentional relinquishment of a known right." *In re Civil Commitment of Giem*, 742 N.W.2d 422, 432 (Minn. 2007). Waiver need not be express, but may be inferred "from conduct or acquiescence." *Id.* In other words, as the alleged assignee of HSBC Bank Nevada, N.A., Defendants have no greater rights than any of its alleged predecessors in interest. *See Delacy Invs., Inc. v. Thurman*, 693 N.W.2d 479, 484 (Minn. Ct. App. 2005) (an assignor can assign 'only what he has' and 'is subject to limitations imposed by the terms of that contract…and to defenses which would have been available…had there been no assignment'") (*citing* REST. (SECOND) OF CONTRACTS, §336, cmt. b (1981)); *see also Krispin v. May Dept. Stores Co.*, 218 F.3d 919, 924 (8th Cir. 2000) (an assignee has the same rights and duties under the contract as the assignor).

Moreover, Defendants' own documents confirm that interest was not

accruing on the account allegedly acquired by Callidus on June 5, 2015. Answer,

Exhibit A, page 36.  The alleged outstanding balance on the statement from

November of 2011 was $**1,665.11**. Answer, Exhibit A, page 31.  The unpaid

balance on the purported 2015 bill of sale was ***exactly the same amount***:

$**1,665.11**. Answer, Exhibit A, page 37.  Interest had been waived; no interest had

accrued. Defendants cannot "restart" the accumulation of interest, ***much less***

***retroactively impose it***, after it had been waived for almost four (4) years!

A number of courts under similar circumstances have held not only that

there is no viable claim for post charge-off interest, but that a debt buyer's attempt

to collect such interest violates the FDCPA.  *See, e.g., McDonald v. Asset*

*Acceptance LLC*, 296 F.R.D. 513, 526 (E.D. Mich. 2013) (granting summary

judgment on FDCPA liability, finding that "because [the original creditor] waived

the interest, [the debt buyer] could not retroactively impose interest for the period

in which it did not own the accounts"); *Terech v. First Resolution Trust Mgmt.*

*Corp.*, 854 F. Supp.2d 537, 544 (N.D. Ill. 2012) ("allegation that Defendants

misrepresented their legal entitlement to collect waived interest, which would

necessarily then misrepresent the amount of the debt, states a claim under §

1692e"); *Simkus v. Cavalry Portfolio Servs., LLC*, 12 F. Supp.3d 1103, 1109 (N.D.

Ill. 2014) (determination of waiver by original creditor "would require a ruling in

favor of [the consumer] and a finding that [the debt buyer] violated the FDCPA");

*Stratton v. Portfolio Recovery Assoc., LLC*, 770 F.3d 443, 452 (6th Cir. 2014) ("By alleging in a complaint that a consumer owes interest that had in fact been waived, a debt collector may be able to secure a default judgment for an amount the consumer does not actually owe").

The unavailability of contractual interest following charge-off is a noncontroversial concept in the Eighth Circuit.  For example, in *Haney v. Portfolio Recovery Associates, L.L.C.*, Case No. 15-1932 (8th Cir. 2016), the issue was whether "the original creditor's choice to charge off a debt and cease collection of contractual interest serves as a binding waiver of any future ability to collect *statutory* interest."  *Id.*, p. 8 (emphasis in original).  Throughout the *Haney* opinion, the waiver of contractual interest (in light if TILA) is assumed.

For example, the Court discusses at length the *Stratton* decision from the 6th Circuit Court of Appeals, in which that Court held that a failure to send periodic statements after charge-off resulted in a waiver of the right to collect both contractual *and* statutory interest under the Kentucky prejudgment interest statute.  *Stratton v. Portfolio Recovery Assoc., Inc.*, 770 F.3d 443, 445 (6th Cir. 2014).  The *Haney* Court cites with approval the dissent from *Stratton*, which holds that while there *is* a waiver of the right to collect contractual interest, there is not *necessarily* a waiver of the right to collect *statutory* interest.  *Haney*, Case. No. 15-1932, pp. 12-13 (citing *Stratton* at 453).  In other words, there is no clearly right to

contractual interest following charge-off, but whether statutory interest is available depends on the language of the state statute.[13]

Defendants attempt to argue that Plaintiff's waiver of interest claim was waived by not being pled in the state court. Docket No. 14 at 20, n.4. In addition to being symptomatic of Defendants' flawed *Rooker-Feldman* and preclusion arguments, this assertion ignores the distinction between the state law claim and an FDCPA violation (which does not depend on compliance or the outcome of state court proceedings). For example, in Minnesota state court, venue is waived if not raised within 20 days. Minn. Stat. § 542.10.  Such waiver, however, does not prevent liability under the FDCPA. Compare 15 U.S.C. § 1692i(a)(2); s*ee also Suesz v. Med-1 Solutions, LLC*, 757 F. 3d 636, 648 (7th Cir. 2014) ("A debt collector for consumer debts may comply with state law, obtain a perfectly valid state court judgment, and simultaneously violate the FDCPA by suing in the wrong venue."); *McCollough v. Johnson, Rodenburg & Lauinger LLC*, 637 F.3d 939, 951 (9th Cir, 2011).

---

[13] Indeed, the Court's first version of the opinion made this assumption explicit.  *See Haney v. Portfolio Recovery Assocs., L.L.C.*, 2016 U.S. App. LEXIS 17287, *13 (8th Cir. Sept. 21, 2016) ("The parties agree that when the original creditor charges off a debt, additional contractual interest no longer accrues."). This statement is consistent with the discussions of counsel and the Court during oral argument.  A different opinion was later substituted, eliminating this line, presumably as part of a settlement between the parties.

Defendants' reliance upon *Coyne v. Midland Funding LLC*, 2017 U.S. Dist. Lexis 113371 (D. Minn. 2017) is misplaced.  The alleged violation in *Coyne* was not that interest had been waived and was unavailable by statute. Rather, the *Coyne* plaintiff alleged that the letter received from Messerli and Kramer included previously accrued interest in the "principal" amount listed in the letter. *Id*. at *3-4 ("Coyne contends that this letter misrepresented the principal balance because the amount listed included principal, fees, and interest."). As discussed below, the *Coyne* decision's analysis of "materiality" is incorrect in light of the Supreme Court's decision in *Santander* and the Eighth Circuit's decision in *Demarais.*

It is important to note that the *Coyne* Court **did** hold that Messerli's improperly seeking "incurred costs" sufficiently stated a violation of the FDCPA:

> Defendants insist that they are entitled to collect the costs listed as "incurred costs" in the Messerli letter. But Coyne plausibly alleges that they were not so entitled, and given the letter's failure—and Defendants' failure here—to specify what those costs entailed, the Court must assume that Defendants were not legally allowed to collect those costs. Thus, the statement that costs were owed is, at least for purposes of a motion to dismiss, a plausible violation of the FDCPA.

*Id*. at *11.  This is the violation discussed in the next section.

## V.     DEFENDANTS' ATTEMPTS TO COLLECT COSTS NOT ACTUALLY INCURRED IN CONNECTION WITH AFFIDAVITS AND MISREPRESENTATIONS ABOUT THOSE COSTS VIOLATE THE FDCPA.

Defendants violated §1692e by making a false statement to Plaintiff and to the state court about costs "paid and incurred."  In doing so, Defendants also

attempted to collect an amount from Heroux that was not authorized by law or contract in violation of §1692f(1). Plaintiff has adequately pled this violation in the complaint. Complaint, ¶ 52 – 56.

The Eighth Circuit has made clear that "there exists no *de minimus* exception to FDCPA liability based upon low dollar amounts." *Haney*, Amended Opinion, p. 21; *see also Duffy v. Landberg*, 215 F.3d 871, 873-75 (8th Cir. 2000) (finding that three demand letters that overstated interest calculations by $ 1.29, $ 1.84, and $ .65, respectively, violated the plain language of § 1692f(1)).

In the Declaration of Identification, Defendants represent to Mr. Heroux and to the state court that "the following items of costs and disbursements by and on behalf of Plaintiff in said action are just, true and correct, and have been necessarily paid and incurred by Plaintiff in said action…." (emphasis added). *See* Complaint, ¶ 52; Answer, Exhibit A, page 51-52. The Declaration of Identification lists a number of itemized costs for which Defendants demanded recovery, including $3.00 for "Affidavits." Complaint, ¶53, Answer, Exhibit A, page 52.

The additional $3 for "Affidavits" was not an item that was "necessarily paid and incurred by [Callidus or Messerli] in said action." Complaint, ¶55. The docket shows that the only Affidavit created in the Collection Action was the Affidavit of Service of the Summons and Complaint. Defendants were awarded $35 (for creation and notarization of the Affidavit of Service) as part of the

judgment. Complaint, ¶54.

Defendants' motion is based "two declarations" that they allege were filed in the state court case. The first declaration is an attorney declaration (Ryan Supple). The second declaration is the declaration of Identification. Neither of these declarations involved payments of $3 "paid and incurred" by Defendants, and Defendants do not even allege that they actually paid this amount to a Notary Public or to anyone else.

Defendants' motion relies upon Minn. Stat. § 357.17 . Docket No. 14 at 24. However, Minn. Stat. § 357.17 entitled "NOTARIES PUBLIC" provides that "[t]he maximum fees to be charged and collected *by a notary public* shall be as follows: . . . for each oath administered, $5." (emphasis added). There is no evidence that a notary public *or an oath administered* happened for either the Ryan Supple Attorney Declaration or the Declaration of Identification. Neither are notarized. The entire purpose of a declaration (as opposed to an affidavit) is that is doesn't have to be notarized. Defendants do not, and cannot, explain how this section creates an affirmative right to recover money for each declaration filed in court, even if no costs were actually incurred for them. Nor do Defendants explain how the existence of this section justifies the representation that they actually incurred and paid such costs when in fact they did not. This is an indefensible factual misrepresentation and an attempt to collect an amount not authorized, a

straightforward violation of the FDCPA.

## VI.    THERE IS NO EXCEPTION TO THE FDCPA FOR "TECHNICAL" VIOLATIONS."

The FDCPA is a strict liability statute and is liberally construed to protect consumers. *Picht v. Jon R. Hawks, Ltd.*, 236 F.3d 446, 451 (8th Cir. 2001). "The characterization of the FDCPA as a strict liability statute is generally accepted." *Allen v. LaSalle Bank*, 629 F.3d 364, 368 n.7 (3rd Cir. 2011) (citing *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010); *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010); *Ellis v. Solomon and Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010); *Ruth v. Triumph P'ships*, 577 F.3d 790, 805 (7th Cir. 2009)).

The Eighth Circuit has emphasized that "there exists no *de minimus* exception to FDCPA liability based upon low dollar amounts." *Haney*, Amended Opinion, p. 21; *see also Duffy v. Landberg*, 215 F.3d 871, 873-75 (8th Cir. 2000).

The complaint sufficiently pleads that Defendants made a series of false statements about the identity of the original creditor as well as the identity of the Plaintiff in the underlying state court proceeding. Defendants repeat the false representation – that Callidus is the successor in interest to HSBC Bank N.A. – several times in the filed state court complaint. Complaint, ¶33.  This statement is false for several reasons.

First, Defendants identify the party suing Mr. Heroux as "Callidus Portfolio Management as successor in interest to HSBC Bank N.A." Complaint, ¶33.  There is no business entity called "Callidus Portfolio Management as successor in interest to HSBC Bank N.A." Complaint, ¶34.

Moreover, Callidus' name as registered with the Minnesota Secretary of State is "Callidus Portfolio Management Inc.," not "Callidus Portfolio Management."  Thus, there is apparently no business entity called "Callidus Portfolio Management," at least none that is registered to do business in the State of Minnesota. Complaint, ¶35.

In addition, according to its own documents, Callidus is not a "successor in interest to HSBC Bank N.A." with respect to any account belonging to Mr. Heroux.  The purported original bill of sale identifies "HSBC Bank Nevada, N.A.," which is not the same business entity as HSBC Bank, N.A. Complaint, ¶36.

Defendants' statements were false. §1692e states: "A debt collector may not use *any* false, deceptive, or misleading representation or means in connection with the collection of any debt." (emphasis added). Defendants made a false representation in connection with the collection of Mr. Heroux's alleged debt. Thus, the Complaint has sufficiently pled a violation of the FDCPA.

Defendants attempt to escape potential liability for their false statements by improperly importing the words "more than a mere technical violation" into the

statute. Such a rewriting of the FDCPA has recently been held improper by the United States Supreme Court. *See Henson v Santander Consumer USA, Inc,* 582 U.S. ___, 198 L. Ed. 2d 177 (2017) ("And while it is of course our job to apply faithfully the law Congress has written, it is never our job to rewrite a constitutionally valid statutory text under the banner of speculation about what Congress might have done had it faced a question that, on everyone's account, it never faced. *See Magwood v. Patterson*, 561 U. S. 320, 334 (2010) ("We cannot replace the actual text with speculation as to Congress' intent")).

If Congress has intended §1692e to not apply to false statements that a debt collector alleges are "mere technical violations" it would have included such language in the FDCPA. *See Santander,* 198 L. Ed. at 184. (In construing FDCPA, the Court should presume 'that [the] legislature says . . . what it means and means . . . what it says.'").

In any event, Plaintiff does not concede that misidentification of a creditor is a mere technicality.[14] The Ninth Circuit's decision in *Tourgeman v. Collins Fin. Servs.,* 755 F.3d 1109, 1119 (9th Cir. 2014) held that improper identification of the original creditor was an FDCPA violation. ("We are persuaded that, in the context

---

[14] Financial companies create elaborate corporate structures to serve their own interests, whether for purposes of tax avoidance, limiting liability, or other reasons. Such entities demand that those corporate formalities be honored. Should such formalities not be honored for both sides?

of debt collection, the identity of a consumer's original creditor is a ***critical piece of information***, and therefore its false identification in a dunning letter would be likely to mislead some consumers in a material way.") (emphasis added); *see also Afewerki v. Anaya Law Grp.*, 868 F.3d 771, 776 (9th Cir. 2017); *Isham v. Gurstel, Staloch & Chargo, P.A.*, 738 F. Supp. 2d 986, 996 (D. Ariz. 2010) ("To preserve the protections and policies of the FDCPA, it is important to know the proper identity of the creditor."); *Mirshafiei v. Legal Recovery Law Offices, Inc.*, 2016 U.S. Dist. LEXIS 143625, *17 (C.D.Cal. 2016)  (litigation on behalf of Arrow, a non-existent entity, violated Sections 1692e(5) and 1692e(10)); *Winslow v. Forster & Garbus, LLP*,  2017 U.S. Dist. LEXIS 205113, *29 (E.D.N.Y. 2017) ("Further, the Court holds that this false statement as to the Trust's status as the "original creditor" is material as a matter of law.") *Fritz v. Resurgent Capital Servs., LP*, 955 F. Supp. 2d 163, 171 (E.D.N.Y. 2013) (a false statement as to the owner of a debt "could easily mislead the least sophisticated consumer as to the nature and legal status" thereof and could "impede the consumer's ability to respond.").[15]

---

[15] The district court's decision in *Credit Bureau v. Todor (In re Todor)*, 2016 U.S. Dist. LEXIS 41083 (D. Or. 2016), cited by Defendants, was based upon the Oregon Court's specific application of a "materiality" requirement.  As set forth in the next section, no such limitation exists in the FDCA.

The statements made by Defendants as to the proper legal title of Callidus would be material to an unsophisticated consumer (assuming such a requirement exists). Listing the identify the party suing Mr. Heroux as "Callidus Portfolio Management as successor in interest to HSBC Bank N.A." is an attempt to confuse the consumer into believing that the Callidus Portfolio Management Inc. has already been determined to be the successor in interest to HSBC Bank N.A. (or HSBC Bank Nevada N.A.). Such legal status is a burden for the debt collector to establish in order to satisfy the standing requirement. Yet Defendants identify the "plaintiff" as such in the pleading's *caption*, as though the assignment were already established with no further proof required, or as if HSBC Bank N.A. was a participant in the lawsuit. Attempting to make the assignment part of Callidus's name is a plausible FDCPA violation.

## VII.   THERE IS NO MATERIALITY REQUIREMENT IN THE FDCPA

### A. The Language of the FDCPA Does Not Contain A Materiality Requirement.

In crafting and passing the FDCPA, Congress chose not to impose a materiality requirement.  The FDCPA enumerates approximately thirty (30) specific debt collection prohibitions, distributed among three categories. Each category of violation begins with a general prohibition, followed by a series of enumerated violations.

In drafting the FDCPA, Congress utilized specific text repeatedly stating

"the following conduct is a violation of this section," and it clarified that a debt collector who engages in that specific conduct is violating the statute. Congress' specific text did not state that the violation requires proof of some additional, unrecited element. Thus, when a plaintiff proves that a debt collector published a list of purported deadbeats in the local paper, he has proven a violation of § 1692d(3). The debt collector cannot defend by arguing, "There is nothing abusive about publishing such a list," or "this particular list was not abusive, because these deadbeats deserved it." Congress made the determination when it drafted the FDCPA, and a court has no discretion to second-guess it. *Santander*, 198 L. Ed. 2d at 184.

So, too, for § 1692e. Once Plaintiff establishes that Defendant's conduct matches one or more of the specific debt collection prohibitions Congress made the determination when it drafted the FDCPA, the debt collectors cannot defend by arguing, "This statement may have been false, but the violation should be excused because the misimpression should not affect the recipient's behavior." Congress made the determination when it drafted the FDCPA, and this Court should not attempt to "replace the actual text with speculation as to Congress' intent." *Santander*, 198 L. Ed. 2d at 184.

### B. The Supreme Court has Never Adopted a Materiality Requirement.

In the recently decided *Sheriff v. Gillie*, 136 S. Ct. 1594, f.n 6 (2016), the

Supreme Court stated:

> Because we conclude that the letters sent by petitioners were truthful, we need not consider the parties' arguments as to whether a false or misleading statement must be material to violate the FDCPA. . .

If the materiality requirement was obvious, the Supreme Court would have said so in *Sheriff*.

### C. The Eighth Circuit has never adopted "Materiality."

The requirement of "materiality" under the FDCPA was recently addressed by the Eighth Circuit in *Demarais v. Gurstel Chargo, P.A. et al.,* 869 F.3d 685 (8th Cir. 2017). The *Demarais* court noted that "[t]his court has not directly addressed whether materiality is required . . ." *Id.*at 699.[16]

Finally, without deciding whether there is a materiality requirement, the *Demarais* Court held that "***Assuming materiality is required***, an attempt to collect a debt not owed is a material violation of § 1692f(1)." *Id*. at 699 (emphasis added).

Moreover, the Eighth Circuit has emphasized that "there exists *no de minimus* exception to FDCPA liability based upon low dollar amounts." *Haney*, Amended Opinion, p. 21. ; see also *Duffy v. Landberg*, 215 F.3d 871, 873-75 (8th

---

[16] The *Demarais* Court also explained that the language in *Janson v. Katharyn B. Davis, LLC.*, 806 F.3d 435 (8th Cir. 2015) simply means that "an attorney does not violate § 1692f by providing truthful, non-misleading information to a court  - not that deception is a requirement of § 1692f." 869 F.3d at 698.

Cir. 2000) (finding that three demand letters that overstated interest calculations by $ 1.29, $ 1.84, and $ .65, respectively, violated the plain language of § 1692f(1)).

### D. There was Conflicting Law From Other Circuits on "Materiality" Pre-*Santander*.

The Eleventh Circuit in *Bourff v. Rubin Lublin, LLC*, 674 F.3d 1238 (11th Cir. 2012) rejected the application of a materiality requirement. *Id.* at 1241. ("A false representation in connection with the collection of a debt is sufficient to violate the FDCPA facially, even where no misleading or deception is claimed"). The Third Circuit in *Jensen v. Pressler & Pressler*, 791 F.3d 413 (3rd Cir. 2015) imported "materiality" by improperly relying upon its interpretation of "congressional intent." The *Jensen* Court admits that the materiality test does not come from the language of the statute itself. *Id.* at 418 ("Jensen correctly argues that the word "material" does not appear in the statute.")

The remaining cases importing "materiality," trace back to dicta in *Hahn v. Triumph P'ships LLC.* 557 F.3d 755, 757-758 (7th Cir. 2009) ("The statute is designed to provide information that helps consumers to choose intelligently, and by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect)."). However, Hahn contradicts Congress' explicitly stated purpose for enacting the FDCPA in §1692(e). See §1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors. . . .").

### E.   *Santander* Sent a Clear Instruction on "Materiality."

Santander sends a clear message that older cases adopting a "materiality"

requirement should not be followed.  Cases based upon the Court's attempt to

replace the actual text with speculation as to Congress' intent are improper. That is

precisely what the unanimous Supreme Court instructed the courts not to do:

> For these reasons and more besides we will not presume with petitioners that
> any result consistent with their account of the statute's overarching goal
> must be the law but will presume more modestly instead "that [the]
> legislature says . . . what it means and means . . . what it says." *Dodd v.
> United States*, 545 U. S. 353, 357 (2005) (internal quotation marks omitted;
> brackets in original).

*Santander*, 198 L. Ed. at 184.  The actual text of the FDCPA does not contain a

materiality requirement, and this Court should not import one.

### VIII.  PLAINTIFF SUFFICIENTLY PLED A VIOLATION OF THE FDCPA BASED UPON THE "INTERLOCKING DISCOVERY."

Judge Montgomery denied Messerli's motion to dismiss in the *Dakowa* case,

noting that the requests in that case - which are strikingly similar the requests

served on Mr. Heroux in this case (with ***the same*** confusing instructions and

definitions) plausibly violates the Fair Debt Collection Practices Act because they

are "seemingly designed to be difficult to follow" and because the requests for

admission plausibly "asked…plaintiff to admit information that defendant knew to

be false."  *Dakowa v. MSW Capital, LLC, and Messerli & Kramer, P.A.*, 2017 U.S.

Dist. LEXIS 23211, *15-16 (D. Minn. Feb. 17. 2017). The same exact

"Interlocking Discovery." The same confusing instructions and definitions. The same requests to admit that were known to be false.  Defendants want the Court to believe that Judge Montgomery somehow got it wrong. There is no valid basis for their argument.

Defendants' first attempt at misdirection is to allege that the cases have "distinct procedural postures."  Nothing about the procedural posture of the *Dakowa* decision was the basis for Judge Montgomery's conclusion.  As admitted by Defendants, Judge Jasper in the state court *Dakowa* case denied their motion for summary judgment on the basis that the ***exact same discovery*** was confusing or misleading. The survey results from the *Dakowa* FDCPA case have confirmed this conclusion:

> Indeed, a survey of consumers who reported receiving nearly identical "Interlocking Discovery" by Messerli showed **98%** of the consumers were confused by the "Interlocking Discovery" and **97.5%** of the consumers who did not respond to the "Interlocking Discovery" failed to do so because of confusion.

Complaint, ¶ 30. The facts relied upon by Defendants - that Mr. Heroux did not respond to the discovery and Defendants were able to obtain judgment against him - ***add plausibility*** to the FDCPA violation.

Footnote 7 of Judge Montgomery's opinion in *Dakowa* explains the "Heads I win; Tail you lose" nature of  Defendants' argument. In *Dakowa*, Defendants argued that the same FDCPA claim should be dismissed based upon *Hill* (a case

where the consumer *won* below).  Now, Defendants argue that the claim should be

dismissed because the consumer *lost* below.  As Judge Montgomery's analysis

explains, unlike the "lack of deception" due to state court success in *Hill*, this case

has additional evidence of deception **because** the consumer lost below.

Defendants' second attempt at misdirection is to question the legal citation

relied upon by Judge Montgomery.  Defendants criticize Judge Montgomery's

reliance upon *MCCollough v. Johnson, Rodenberg & Lauinger*, 610 F.Supp. 2d.

1247 (D. Mont. 2009).  Docket No. 14 at 29. However, as pled in this case, the

Interlocking Discovery served by Defendants upon Mr. Heroux contained a request

to admit that was knowingly false. Complaint ¶¶  19-28.  As alleged in Paragraph

22 of the Complaint:

> There is no document in Exhibit B [to the Interlocking Discovery] that could
> truthfully be described as "the Bill of Sale and Assignment that transferred
> [Plaintiff's] Account from HSBC Bank N.A. to Callidus Portfolio
> Management."

*See* also Complaint, ¶¶ 20 & 21.[17]  And yet, Defendants sent requests to admit to a

pro se consumer seeking to have him admit:

---

[17] Contrary to Defendants' assertion, Heroux does not admit that the Bill of
Sales show a complete chain of title. Docket No. 14 at 33. Rather, the complaint
outlines generally the description contained in 5 documents attached as Exhibit B
to the "Interlocking Discovery." Complaint, ¶ 21. As alleged in the Complaint,
"No particular account is referenced" in the five documents.

> That Exhibit B attached hereto is a true and correct copy of the Bill of Sale and Assignment that transferred your Account from HSBC Bank N.A. to Callidus Portfolio Management.

Complaint, ¶ 19. The request to admit did not seek authentication or whether the bills of sale were "genuine" as Defendants now allege. The purpose of the discovery is for Defendants to be able to avoid their burden of proof using documents that undeniably do not contain the requested admission.

Moreover, as noted by Judge Montgomery, the Eighth Circuit has held that the prohibitions of the FDCPA apply to discovery and requests for admission. Dakowa, at * 13 (citing *Powers v. Credit Mgmt. Servs., Inc.,* 776 F.3d 567, 573–74 (8th Cir. 2015)); *see also Louie v. Asset Capital Recovery Group, LLC,* 2015 U.S. Dist. LEXIS 97750, *1 (N.D. Cal. 2015) ("[N]umerous other courts have recognized that the FDCPA can apply to litigation conduct, such as the filing of complaints or requests for admission."); *McCullough v. Johnson, Rodenburg & Lauringer, LLC,* 637 F.3d 939, 950-51 (9th Cir. 2011); *Donohue v. Quick Collect, Inc.,* 592 F.3d 1027, 1031-32 (9th Cir. 2010); *Sayyed v. Wolpoff & Abramson,* 485 F.3d 226, 228 (4th Cir. 2007) (reversing dismissal of an FDCPA claim based on false statements in interrogatories); *O'Connor v. Nantucket Bank*, 992 F. Supp.2d. 24, 32 (D. Mass. 2014) ("several courts of appeals have affirmed the applicability of the FDCPA to particular activities and documents involved in litigation,

including: written discovery documents; and service of requests for admission")

(citations omitted).[18]

Defendants next attack on *Dakowa* is about the term "Interlocking

Discovery." Defendants provide nothing but lawyer argument to this Court. Judge

Montgomery has already decided that the words and phrased were one of the three

independent reasons Plaintiff stated a viable FDCPA claim:

> The first reason relates to the words and phrases themselves. The documents
> served upon Dakowa are oddly captioned "First Set of Interlocking
> Discovery." "Interlocking Discovery" is not a standard legal term. Rather, it
> appears to be an attorney-created phrase positioned in the caption of a legal
> document. Defendants have not articulated a reason for captioning its
> documents in this unusual way, leaving unrebutted Dakowa's allegation that
> "Interlocking Discovery" is designed to trick and confuse.

*Id.* at 14.

Similarly, in this case, Heroux alleges that that "Interlocking Discovery" is

designed to trick and confuse, particularly in light of the remainder of the

document. Complaint, ¶13. In fact, the empirical evidence alleged in the Complaint

---

[18] *Paz v. Freedman Anselmo Lindberg LLC*, 2015 U.S. Dist. LEXIS 129626
(N.D. Ill 2015) involved allegations of false requests to admit relying on the
consumers answer to the complaint. The *Paz* Court did not hold that this was not a
viable theory, but simply that the answer did not establish that the requests to admit
were false. *Paz* is also inconsistent with the Eighth Circuit's ruling in
*Hemmingsen*, 674 F.3d at 818. ("Debt collector lawyers make representations to
debtors' attorneys or in debt collection pleadings in a wide variety of situations.
Though rarely made 'directly' to the consumer debtor, such representations
routinely come to the consumer's attention and may affect his or her defense of a
collection claim.")

adds plausibility to this allegation. Complaint, ¶ 30. (". . . **98%** of the consumers were confused by the "Interlocking Discovery" and **97.5%** of the consumers who did not respond to the "Interlocking Discovery" failed to do so because of confusion.").

Amazingly, the explanation presented to this Court by the Defendants for the term "Interlocking Discovery" is that it uses the term like a puzzle. Docket No. 30 ("the puzzle has 500 interlocking pieces.")  The empirical evidence establishes that the title is certainly puzzling to the consumers.  Contrary to Defendants' suggestion, "Connected Discovery" would suffer from the same FDCPA violation that "Interlocking Discovery" does.

The term "Interlocking Discovery" does not appear in the Minnesota Rules of Civil Procedure or even the Federal Rules of Civil Procedure.[19]  The phrase is not a "legal term of art." It is a manufactured phrase for a single purpose – confusing the consumer. "Discovery" exists under the Rules. "Requests for Production;" "Request to Admit;" "Interrogatories" – they all exist under the rules. Giving it an intentionally confusing name, one using a word designed to intimidate, is not appropriate.

---

[19] Heroux's counsel is unaware of any pleadings that it has filed that "do not exist under the Minnesota Rules of Civil Procedure." Docket No. 14 at 31. More importantly, any such pleadings (even if they exist) have not been served on a consumer in an attempt to collect a debt.

Finally, Defendants attack Judge Montgomery's analysis of the definitions in the "Interlocking Discovery." As pled in the complaint in this case, the definitions and instructions are not intended to assist the consumer with answering the discovery. Complaint, ¶¶ 13 – 18. They are intended to confuse the consumer into not answering the discovery. *Id*. ¶¶ 13 & 17.

As pled in the complaint, although not required for an FDCPA claim, the confusion caused by the Interlocking Discovery would lead an unsophisticated consumer to not answer the discovery which results in judgment against them. Complaint, ¶¶ 29 & 30.  Although the test is objective not subjective, this is exactly what happened to Mr. Heroux.

## IX.    THE FDCPA DOES NOT REQUIRE CONSUMERS TO CONSULT ATTORNEYS

The FDCPA was designed by Congress to protect consumers. See §1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors. . . .").  It is not the purpose of the FDCPA to force *pro se* consumers to pay for attorneys to explain confusing terms manufactured by debt collection attorneys to trick them.

The Eighth Circuit had adopted different standards for communication sent directly to the consumer, as opposed to counsel representing the consumer. *Demarais* , 869 F.3d at 695 ("But while the 'unsophisticated

consumer' standard applies to communications with debtors, a 'competent attorney' standard applies '[w]here an attorney is interposed as an intermediary between a debt collector and a consumer.'") (quoting *Powers v. Credit Mgmt. Servs., Inc.*, 776 F.3d 567, 574 (8th Cir. 2015)).

Defendants seek to abolish the distinction created by the Eighth Circuit and force consumer to hire attorneys to represent them in consumer cases in order to protect their rights under the FDCPA.  No such requirement exists in the FDCPA or Eighth Circuit law.

The proposition that "the *pro se* party is still required to follow the Court rules" does not mean that consumer should be held to the standard of the competent attorney for the purposes of the FDCPA.  Rather, it is simply another example of the divergence between the standard for consumers representing themselves in state court and the standard for violation of the FDCPA by the debt collectors.

DATED:  February 23, 2018

By:  *s/ Darren Brayer Schwiebert*
Darren Brayer Schwiebert (#260642)
Darren@dbslawmn.com
DBS Law LLC
301 Fourth Avenue South, Suite 280N
Minneapolis, MN 55415
612.501.6008
*Attorney for Jason Heroux*