# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Jason Heroux,<br><br>    Plaintiff,<br><br>v.<br><br>Callidus Portfolio Management, Inc., and Messerli & Kramer, P.A.,<br><br>    Defendants. | Case No. 17-cv-05132 (HB)<br><br>**ORDER AWARDING ATTORNEY'S FEES AND COSTS** |

Darren B. Schwiebert, DBS Law LLC, 301 Fourth Avenue South, Suite 280N, Minneapolis, MN 55415; for Plaintiff

Derrick N. Weber and Stephanie Shawn Lamphere, Messerli & Kramer, P.A., 3033 Campus Drive, Suite 250, Plymouth, MN 55441, for Defendant

---

HILDY BOWBEER, United States Magistrate Judge

  This matter is before the Court on Plaintiff Jason Heroux's Motion for Determination of Amount of Reasonable Attorney Fees [Doc. No. 42], following a settlement of the underlying action as a part of which the parties stipulated that the Court would determine the amount of the award to Heroux for attorney's fees and costs pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* [Doc. No. 37].[1] Heroux seeks an award of attorney's fees in the amount of $41,720 and costs in the amount of $400. For the reasons set forth below, the Court awards attorney's fees in the

---

[1] The parties also consented to proceed before the undersigned Magistrate Judge for all purposes, including entry of final judgment.

amount of $22,946 and costs in the amount of $400.

I.  **Background**

   A.  **The State Court Action**

The factual background underlying this case is largely set forth in an Order by the Honorable David S. Doty on Defendants' Motion for Judgment on the Pleadings.[2] [Doc. No. 29.] Briefly, Callidus Portfolio Management Inc. ("Callidus"), sought to collect on a debt owed by Plaintiff Jason Heroux. Callidus hired Defendant Messerli & Kramer, P.A. ("Messerli") as counsel to assist in collecting the debt. (*Id.*) Messerli served Heroux in April 2016 with a state court complaint seeking $1665.11 plus interest. Heroux answered the complaint in March 2017 and denied all liability. Messerli filed the complaint in Hennepin County District Court and served on Heroux a document entitled "Plaintiff's First Set of Interlocking Discovery." Heroux did not respond to the discovery, and, further, did not respond or appear when Messerli, on behalf of Callidus, moved for summary judgment against him. On June 23, 2017, the Hennepin County District Court entered judgment against Heroux in the amount of $2,881.02.

   B.  **The Federal Court Action**

On November 16, 2017, Heroux filed the Complaint in this case [Doc. No. 1], alleging that Callidus' and Messerli's conduct in connection with the state court action violated multiple provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* [Doc. No. 1.] Heroux alleged several violations of the FDCPA,

---

[2] Callidus Portfolio Management Inc. was originally named as a Defendant in this action.

including that Defendants' use of the "Interlocking Discovery" in their efforts to collect a consumer debt from Heroux was intentionally misleading and that the document was drafted with the purpose of causing confusion and curbing Heroux's responses. (Compl. ¶ 13 [Doc. No. 1].)

On January 3, 2018, Heroux made a settlement demand of $3,000, inclusive of attorneys' fees and costs. (Schwiebert Decl. ¶ 31 [Doc. No. 44].) On January 19, 2018, Defendants filed a joint Answer [Doc. No. 10], and shortly thereafter moved for judgment on the pleadings [Doc. No. 12], arguing that Heroux's claims were barred by *res judicata* and collateral estoppel in view of the prior state court proceedings, that the claims were also barred by the *Rooker-Feldman* doctrine because they were an impermissible attempt to collaterally appeal the state court decision, that Callidus was not a "debt collector" for purposes of the FDCPA, and that Heroux's FDCPA claims against both Defendants also failed on the merits. With regard to the particular allegations concerning the "Interlocking Discovery," Defendants urged, *inter alia,* that Judge Doty should not rely on a previous decision in which United States District Judge Ann D. Montgomery had permitted an FDCPA case to go forward on a similar claim, arguing that the issue in that case had not been fully briefed. (Defs.' Mem. Supp. Mot. J. Pleadings at 29 [Doc. No. 14] (citing *Dakowa v. MSW Capital, LLC*, No. CV 16-2753 ADM/FLN, 2017 WL 662975, at *1 (D. Minn. Feb. 17, 2017)).)

Judge Doty heard argument on Defendants' Motion for Judgment on the Pleadings and issued an order on May 1, 2018, granting it in part and denying it in part. [Doc. No. 29]. Judge Doty rejected Defendants' claim preclusion and *Rooker-Feldman* arguments

(*id.* at 3-7), but agreed that Callidus was not a debt collector for purposes of the FDCPA and therefore dismissed with prejudice all claims against Callidus (*id.* at 8). As against Messerli, Judge Doty dismissed all of the claims of alleged FDCPA violations except the claim concerning Messerli's use of the "Interlocking Discovery." As to that claim he found Judge Montgomery's decision in *Dakowa* instructive, and concluded that Heroux had stated a plausible claim for relief. (*Id.* at 11.)

### C. The Settlement

The Court held a pretrial scheduling conference with counsel for the parties on February 22, 2018. [Doc. No. 17.] On May 2, 2018, counsel for Heroux and Messerli took part in a telephonic status conference with the Court to discuss the prospects for settlement. [Doc. No. 30]. Over the next six weeks, the parties engaged in settlement negotiations, and by June 15, 2018, they had agreed to the terms of a settlement. The negotiated settlement provided for a payment by Messerli to Heroux of $1,500 and further provided that Messerli would pay Heroux's costs and attorneys' fees. (Schwiebert Decl. ¶ 36 [Doc. No. 44].) However, they were unable to reach an agreement regarding the amount of attorneys' fees. (Schwiebert Decl. ¶ 12 [Doc. No. 44].) Accordingly, on July 19, 2018, they entered into a Stipulation for Court Determination of Attorneys' Fees and Costs and Proposed Briefing Schedule in which they agreed the Court would decide the issue of attorneys' fees and costs. [Doc. No. 37.] The Court approved the Parties' Stipulation. (Order on Stipulation [Doc. No. 41].)

## II. Heroux's Motion for Attorney's Fees

Heroux requests $41,720 in attorney's fees, representing 104.3 hours worked at an

hourly rate of $400, plus $400 in costs, amounting to a total of $42,120.[3]  (Pl.'s Reply Supp. Mot. at 11 [Doc. No. 49].)  Messerli and Callidus argue the Court should award no more than $5,000 total in fees and costs.[4]  (Defs.' Mem. Opp'n Mot. at 1 [Doc. No. 47].)

### A. Legal Standard

The FDCPA allows successful plaintiffs to recover "the costs of the action, together with a reasonable attorney's fee as determined by the court."  15 U.S.C. § 1692k(a)(3).  The party seeking an award must provide evidence to support the reasonableness of the fees, both as to the hourly rate and the hours worked, and should "exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."  *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983); *see also Wheeler v. Mo. Highway & Transp. Comm'n,* 348 F.3d 744, 754 (8th Cir. 2003).

Both parties agree that courts in the District of Minnesota use the "lodestar method" to assess fee requests in FDCPA cases.  This involves multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate" to create a figure known as the "lodestar."  *Lamberson v. Bank of Am. Corp.*, No. 11-cv-335 (ADM/TNL), 2012 WL 4129807, at *1 (D. Minn. Sept. 19, 2012); *Gupta v. Arrow Fin. Servs., LLC*, No. 09-cv-3313 (SRN/SER), 2012 WL 1060054, at *1 (D. Minn. Mar. 29,

---

[3]  Schwiebert states in his declaration that he excluded from this total any time spent in connection with the claims that were dismissed by Judge Doty, and that he also excluded any time spent by his paralegal on the file.  (Schwiebert Decl. ¶¶ 18, 20[Doc. No. 44].)  The specific activities for which Plaintiff seeks to recover fees are set forth in the billing statement attached as Exhibit 3 to that declaration (hereafter "Billing Statement" [Doc. No. 44-3].)

[4]  Defendants do not challenge the requested $400 in costs.

5

2012). The resulting value is a starting point, but the Court has discretion in determining a reasonable amount of attorneys' fees. For example, a court "may adjust the lodestar rate downward for small recoveries or minor violations of the FDCPA." *Lamberson*, 2012 WL 4129807 at *2, 4. Among the factors courts consider are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983).

### B. Reasonableness of Attorney's Hourly Rate

The Court turns first to a consideration of whether the hourly rate of $400 proposed by Heroux's counsel, Darren Schwiebert, was reasonable in the context of this case. "The reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of comparable skills, experience and reputation." *Price v. Midland Funding LLC*, No. 18-cv-509 (SRN/SER), 2018 WL 5259291, at *4 (D. Minn. Oct. 22, 2018). In determining whether an hourly rate is reasonable, "courts may draw on their own experience and knowledge of prevailing market rates." *Warnock v. Archer*, 397 F.3d 1024, 1027 (8th Cir. 2005).

In support of his hourly rate, Schwiebert submitted a declaration that describes his background and experience, including that he has been in practice for more than twenty years, has litigated over fifty FDCPA claims to resolution in Minnesota, and has also

6

been involved in at least one successful appeal of an FDCPA case. (Schwiebert Decl. ¶¶ 3, 7, 8 [Doc. No. 44].) He further noted that while his regular rate for consumer law cases is $400 per hour, he charges $460 per hour for patent litigation. (*Id.* ¶¶ 25-26.) In addition, Schwiebert attached an excerpt from a document known as the Burdge Report, the report of a survey of billing rates, by geographic market, for consumer law attorneys in the United States during 2015-2016. (Schwiebert Decl. Ex. 4 [Doc. No. 44-4].) The Burdge Report found the median attorney rate in the Twin Cities for consumer law attorneys handling credit rights cases to be $350 per hour, but the median years in practice of the attorneys surveyed was 12.5, well under Schwiebert's 23 years in practice. (*Id.* at 4.) The report cited billing rates of up to $650 per hour for consumer law attorneys in the Twin Cities, with the "75% median" at $500 per hour. (*Id.*) It also reported that the average attorney hourly rate in the Twin Cities for consumer law attorneys with 21-25 years of practice was $500. (*Id.* at 5.) In addition to the Burdge Report, Heroux submitted a declaration of David Swenson, a former colleague of Schwiebert's, who attested to the reasonableness of the proposed billing rate. (Swenson Decl. ¶ 13 [Doc. No. 45].) Defendants argue the proposed rate is excessive for the type of litigation, but other than a footnote in their memorandum regarding the billing rate of Defendants' lead counsel Derrick Weber (Defs.' Mem. Opp'n Mot. at 13 n.3 [Doc. No. 47]), Defendants proffered no evidence of their own in opposition to the declarations submitted by Heroux.

     Rulings in this District have approved hourly rates in FDCPA cases ranging from $200 to $450. Both parties cite decisions that have ruled on the reasonableness of Schwiebert's hourly rate in particular. In *Meidal v. Messerli & Kramer, P.A.,* No. 18-cv-

7

985 (PAM/BRT), 2018 WL 4489693 (D. Minn. Sept. 19, 2018), the Honorable Paul A. Magnuson reduced Schwiebert's hourly rate from $400 to $300, although he found the reported 16.3 hours worked to be reasonable. *Id.* at *2. Judge Magnuson justified the decrease in hourly rate because of the marginal time and effort required, observing that the case was resolved before an answer was filed, that the plaintiff's three court filings were largely duplicative of pre-existing documents, and that the case did not require a "great level of experience or skill." *Id.* at *1.

But in *Price,* the Honorable Susan Richard Nelson found Schwiebert's $400 rate to be reasonable, citing his years of experience in litigation generally and in consumer law in particular; the sworn declaration of attorney Swenson attesting to his competence, reputation, and experience; the information in the Burdge Report citing billing rates charged by consumer law attorneys ranging between $350 and $450 per hour; and other cases in this District and in state court involving Schwiebert and other experienced consumer law attorneys in which similar rates were approved. 2018 WL 5259291, at *5. Judge Nelson considered the argument of the defendants in that case—also made in the instant case—that Schwiebert is a solo practitioner and therefore more likely to perform work that in other firms would be done by lower-billing or non-billing personnel. *Id.* at *4. However, she was "not persuaded that because Schwiebert is a solo practitioner, a lower reasonable hourly rate should automatically apply"; rather, she reasoned that the argument was one more appropriately considered in the context of evaluating the specific billing entries. *Id.*

Taking into consideration the evidence of record and the specific circumstances of

8

this case, particularly the motion practice relating to Defendants' motion for judgment on the pleadings, the Court finds both Judge Nelson's reasoning and her conclusion instructive in this case, and concludes that $400 is a reasonable hourly rate in this market for someone of Schwiebert's experience generally and in this specific area of litigation.

That said, to quote the late John F. Kennedy, "of those to whom much is given, much is required." President-elect John F. Kennedy, address to the Massachusetts Legislature (Jan. 9, 1961). In other words, both clients and courts have a legitimate expectation that an experienced attorney with a high billing rate will bring more knowledge and skill to the table and will therefore be more efficient with his or her time than an inexperienced one billing at a significantly lower rate. As the Honorable Michael J. Davis observed in *Young v. Diversified Consultants, Inc.,* 554 F. Supp. 2d 954, 957 (D. Minn. 2008), "[counsel's] expertise should enable them to efficiently litigate FDCPA claims and it keeps this expertise in mind when determining the number of hours reasonably expended." *See also Altergott v. Modern Collection Techniques, Inc.,* 864 F. Supp. 778, 781 (N.D. Ill. 1994) ("While this skill and experience may justify his high hourly rates, it also makes the amount of time that [counsel] spends on a relatively simple task considerably more suspect."). In addition, as already noted, counsel, particularly one billing at that rate, should not ordinarily expect to be compensated for non-billable administrative or clerical tasks, such as filing documents on CM/ECF. Thus, the Court turns next to an examination of the reasonableness of the nature and number of hours expended by counsel on this case.

9

### C. Reasonableness of Hours Expended

Defendants argue the total time and fees claimed by Schwiebert for his work on this case are unreasonable and excessive. They posit a number of challenges, both general and specific. First, Defendants note overall that Schwiebert recorded 99.1 hours of work (even after ostensibly having excluded all time associated with work on the five claims dismissed by Judge Doty) on a case that settled for $1,500. Defendants argue that the very experience in federal court practice and in FDCPA litigation that was a significant part of the justification for Schwiebert's $400 billing rate should result in more efficient work, particularly given that the only issue to survive the Defendants' motion for judgment on the pleadings was the one Schwiebert had previously litigated in *Dakowa*. Among the examples of activities they contend did not reasonably require the time reportedly expended are:

- Drafting the Complaint. The billing statement indicates that even after excluding time related to drafting the five claims that were dismissed, Schwiebert spent 3.6 hours drafting the complaint in this case, much of which, Defendants contend, was duplicative of complaints he had filed in other cases on behalf of other clients. They note in particular that the paragraphs comprising the claim relating to "interlocking discovery" were lifted essentially wholesale from the complaint Schwiebert filed in *Dakowa*. (*Compare Dakowa*, 16-cv-2753 (Compl. ¶¶ 13-16 [Doc. No. 1] *with Heroux*, 17-cv-5132 (Compl. ¶¶ 10-14 [Doc. No. 1].) Defendants cite *Kuntz v. Messerli & Kramer P.A.*, No. 16-cv-2676, 2017 WL 3332222, at

*2 (D. Minn. Aug. 4, 2017), in which the Honorable Joan N. Ericksen concluded that "although a complaint is required in every action, it was unreasonable for counsel to spend over ten hours drafting a seven page, 44-paragraph complaint that mirrors in substantial part the complaint from Kuntz's earlier action."

- <u>Reviewing Defendants' Answer.</u> Defendants challenge the reasonableness of the 1.6 hours reported for reviewing their answer to Heroux's complaint.
- <u>Research and drafting response to motion for judgment on the pleadings.</u> Defendants challenge the reasonableness of the total time spent on Heroux's responsive memorandum, noting, *inter alia,* that in one 9-day period between February 5, 2018, and February 14, 2018, Schwiebert billed 36 hours in 4-to-6-hour blocks "researching and drafting" the opposition to Defendants' motion. Anticipating Schwiebert's argument that the motion itself was quite lengthy, Defendants contend it was necessitated in large part by Heroux's 76-paragraph Complaint, from which 5 of the 6 claims were ultimately dismissed.
In addition, Defendants highlight specific entries relating to the responsive memorandum, such as:
    - 26 hours spent researching the concepts of *res judicata* and claim preclusion, although the discussion of those issues comprised only 5 pages of the resulting brief;
    - 8.5 hours spent researching the circumstances under which materials

11

extraneous to the complaint (in this case, the state court documents attached to Defendants' Answer) may be considered by a court in ruling on a motion for judgment on the pleadings;
- o 5.1 hours spent on the issue of interlocking discovery, most of which Defendants argue was "cut and pasted" from the memorandum Schwiebert filed in *Dakowa,* except for citations to Judge Montgomery's decision in that case;
- o 7.3 hours spent researching cases cited in Defendants' reply memorandum;
- o 1.1 hours spent reading Judge Doty's 12-page order on the motion.
- <u>Consideration and consultation with client regarding settlement.</u> Defendants argue it was unreasonable to spend 7.4 hours—$3000 worth of time—over multiple days between May 30, 2018, and July 9, 2018, consulting with Heroux about whether to accept a $1,500 settlement.

Defendants further argue that fees for certain activities should be excluded altogether because they are of a nature that are not "properly billed to one's client." *Hensley,* 461 U.S. at 434. On this point, Defendants cite time spent in initial consultation with the client[5] because clients are not typically charged for initial consultations, s*ee Young*, 554 F. Supp. at 958; and administrative tasks such as filing of documents with the

---

[5] Defendants cite entries on September 29, 2017, October 2, 2017, and October 6, 2017, as reflecting initial consultations with the client that should not have been billed because those entries refer to the case only as "possible." (*See* Billing Statement [Doc. No. 44-3 at 1].)

Court.[6]

Finally, in addition to challenging the reasonableness of the amount of time spent on various activities, Defendants also argue the total fee award should be reduced because of the limited success achieved—five of six claims dismissed and a $1,500 settlement in Heroux's pocket at the end of it all—and because much if not all of the fees could have been avoided had Heroux attempted to negotiate a resolution of his claim before he filed suit.

Heroux argues in response that *Dakowa*, by Defendants' own admission, was not dispositive of the viability of the "interlocking discovery" claim. Further, he contends, Defendants' motion for judgment on the pleadings raised complex issues of federal procedure—the consideration of extensive extraneous materials as well as the doctrines of claim preclusion, *res judicata*, and *Rooker-Feldman*—that had not been raised in *Dakowa*. In addition, he points out that, unlike *Meidal,* Defendants did not make an offer of judgment before filing their Answer; on the contrary, they filed an answer with seventy pages of attachments and the case was litigated for over four months before a settlement was reached, during which time the parties engaged in an exchange with each other and the Court about possible case reassignment, a Rule 26(f) conference, a Rule 16 scheduling conference, and dispositive motion practice, and had been about to embark upon discovery.

---

[6] Defendants cite entries on November 20, 2017, February 23, 2018, and June 18, 2018, as containing references to "filing" of documents with the Court. (*See* Billing Statement [Doc. No. 44-3 at 1, 3-4].)

After review of the record and the parties' arguments, and careful consideration of the billing entries, the Court agrees with Defendants that a significant reduction in the number of hours billed is warranted here, although not to the extent they urge. Of greatest impact on the bottom line; the Court finds that the total number of hours recorded in connection with Heroux's response to Defendants' motion for judgment on the pleadings was excessive, for several reasons. First, by the Court's calculation, counsel represents that he spent nearly 75 hours—almost two weeks of time—solely on the portions of the motion for judgment on the pleadings that related to the one out of six issues that survived Judge Doty's ruling. Of that 75 hours, he spent 42 hours (counting time spent analyzing cases cited in Defendants' reply brief) on claim preclusion, *res judicata*, and *Rooker-Feldman,* particularly in the context of FDCPA litigation, and another 8.5 hours on the standard for granting judgment on the pleadings and whether the court should consider extraneous materials. An attorney with Schwiebert's experience in federal court litigation generally and FDCPA litigation in particular (and the billing rate to show for it) should not have needed to spend nearly that much time investigating these issues as though for the first time. Furthermore, that kind of "get the lay of the land" legal research is the kind of activity that is more properly left to an attorney with a significantly lower billing rate, and even then, the amount of time reportedly spent would strike the Court as excessive.

The Court also finds excessive the amount of time spent on the portions of the motion specifically relating to "interlocking discovery"—more than 9.5 hours by the Court's calculation—given that Heroux's response, to the extent it did not cut and paste

14

from Schwiebert's memorandum in *Dakowa,* consisted primarily of explaining why Judge Montgomery got it right in that case, and was significantly shorter than the corresponding portion of the prior memorandum.

As for the other specific challenges leveled by Defendants, the Court agrees that at least some, but not all, of the early consultations with Heroux were of the type that are not typically billed to clients in this area of litigation, and that not all of the 7.4 hours recorded for consultations with Heroux regarding the proposed settlement was time reasonably spent. On the other hand, the Court cannot conclude that the time reported for drafting those portions of the Complaint applicable to the claim that was not dismissed, and for review of Defendants' Answer and attachments, was necessarily excessive. Similarly, although the Court recognizes that it appears Schwiebert may have been doing some of his own filing and scheduling, tasks that should ordinarily be delegated to non-billing personnel, it does not appear that those activities accounted for a significant amount of time. Moreover, common sense and experience tell us that the time required to delegate a quick task, however clerical in nature, is sometimes as much as or greater than the time to do it for oneself.

The Court has also considered Defendants' overarching argument that the amount sought in fees exceeds what is reasonable in view of the "limited success" of Heroux's case, both in terms of the outcome of the motion to dismiss and the amount of the settlement Heroux himself will receive. As for the former consideration, Heroux's counsel has represented that time spent on the claims that were dismissed was excluded from his billing statement. As for the latter, it is well-established that "the amount of

15

attorney fees need not be proportionate to the amount of damages recovered when Congress sets up a statutory scheme, such as this one, that provides for statutory damages and fee shifting." *Phenow v. Johnson, Rodenberg & Lauinger, PLLP*, 766 F. Supp. 2d 955, 959 (D. Minn. 2011). Indeed, in *Armstrong v. Rose Law Firm, P.A.*, the Honorable Susan Richard Nelson awarded $43,180 in attorney's fees in an FDCPA case in which the plaintiff prevailed on summary judgment after a year of litigation and was awarded statutory damages of $1,000. No. 00-cv-2287 (MJD/SRN), 2002 WL 31050583, at *5 (D. Minn. Sept. 5, 2002) (citing the defendant's strategy to aggressively defend the case on a theory that ultimately proved unsuccessful, resulting in increased work required on the part of the plaintiff's counsel). As Judge Nelson observed, "[t]he FDCPA contains a fee shifting statute to ensure that meritorious parties such as Plaintiff can attract competent legal representation." *Id.* at *5.

Nor is the Court persuaded by Defendants' argument that if only Heroux had approached them about settlement before he filed his Complaint, most of the subsequent expenditure of time could have been avoided. While that may be a legitimate consideration in some cases, the sequence of the parties' motion practice and settlement efforts in this case do not support the Defendants' "but for" argument.

At the same time, the Court can and should look at the degree of success achieved by a plaintiff in considering whether the amount of time spent on various activities appears to have been reasonable. *Hensley,* 461 U.S. at 436. In that regard, the Court may also consider examples in other cases of comparable duration and dispositive motion practice. One such example of interest here is *Morrow v. Weinerman & Associates, LLC*,

16

No. 11-cv-104 (RHK/LIB), 2012 WL 1593301 (D. Minn. May 7, 2012), where the Honorable Richard H. Kyle determined that the plaintiff's counsel reasonably expended just under thirty hours in an FDCPA case that lasted sixteen months and survived summary judgment.

Taking all of these considerations into account, and attempting to do the kind of "rough justice" to which Judge Ericksen referred in *Kuntz*, 2017 WL 3332222, at *2, the Court finds that Heroux's requested fees should be reduced by 45%, primarily on account of the excessive hours spent on the response to the motion for judgment on the pleadings. The Court will therefore award fees in the amount of $22,946.

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff Jason Heroux's Motion for Determination of Amount of Reasonable Attorney Fees [Doc. No. 42] is **GRANTED**, and Defendant Messerli & Kramer shall pay Plaintiff Jason Heroux's attorneys' fees in the amount of $22,946, plus costs of $400.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: January 3, 2019         s/ *Hildy Bowbeer*
                               HILDY BOWBEER
                               United States Magistrate Judge